**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   13-cr-00392-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    1.    George Thomas Brokaw,
    2.    John J. Pawelski, and
    3.    Mimi M. Vigil,

    Defendants.

---

**GOVERNMENT'S SENTENCING STATEMENT**

---

The United States of America files the following sentencing statement as required by D.C.COLO.LCrR 32.1(a)(1):

**STATUTORY PENALTIES**

1.    <u>Conspiracy to File False Claims for Refund</u>:   All three Defendants were convicted of conspiracy to file false claims for refund as charged in Count 1, in violation of Title 18, United States Code, Section 286.   The maximum statutory penalties for this count are ten years of imprisonment, a fine of $250,000, or both, 3 years of supervised release, and a $100 special assessment fee.

2.    <u>False Claims for Refund</u>:   Defendant Brokaw was convicted of filing false claims for refund as charged in Counts 2-7, Defendant Pawelski was convicted of these charges in Counts 8-11, and Defendant Vigil was convicted of this charge in Count 12, all in

1

violation of Title 18, United States Code, Section 287.   The maximum statutory penalties for each of these counts are five years of imprisonment, a fine of $250,000, or both, 3 years of supervised release, and a $100 special assessment fee.

3.      <u>Conspiracy to Corruptly Endeavor to Obstruct or Impede the Due Administration of the Internal Revenue Laws</u>:   All three Defendants were convicted of conspiracy to corruptly endeavor to obstruct or impede the due administration of the internal revenue laws as charged in Count 14, in violation of Title 18, United States Code, Section 371. The maximum statutory penalties for this count are five years of imprisonment, a fine of $250,000, or both, 3 years of supervised release, and a $100 special assessment fee.

4.      <u>Corrupt Endeavor to Obstruct or Impede the Due Administration of the Internal Revenue Laws</u>: Defendant Brokaw was convicted of corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws as charged in Count 15, Defendant Pawelski was convicted of this offense as charged in Count 16, and Defendant Vigil was convicted of this offense as charged in Count 17, all in violation of Title 26, United States Code, Section 7212(a).   The maximum statutory penalties for this count are three years of imprisonment, a fine of $250,000, or both, 3 years of supervised release, and a $100 special assessment fee.

## FACTS RELEVANT TO SENTENCING

5.      The evidence at trial established that conduct relevant to the conspiracy to file false claims for refunds charged in Count 1 of the First Superseding Indictment and the false claims charged in Counts 2-12 began in or around October, 2008 and continued through in or about May, 2009.   The conspiracy to corruptly endeavor to obstruct the due

administration of the internal revenue laws charged in Count 14 and the obstruction of the internal revenue laws charged in Counts 15-17 began in or around March, 2008 and continued through in or about April, 2012.   Defendants Brokaw, Pawelski, and Vigil were members of both conspiracies, as was former co-defendant Clara Mueller.   The first conspiracy had an additional, unindicted member, Curtis Morris, who was previously convicted of charges relating to false tax refund claims in criminal case number 10-cr-00317-REB-01.

## Conduct Relevant to the False Claims for Refunds

6.     Defendant Brokaw filed six false claims for tax years 2003-2008 totaling $358,218, Gov't Exs. 10, 12, 14, 16, 18, & 20, Defendant Pawelski filed four false claims for tax years 2004-2007 totaling $22,961,548, Gov't Exs. 30, 31, 33-35, 37, 38, & 40, and Defendant Vigil filed one $372,169 false claim for tax year 2005, Gov't Exs. 50, 51.

7.     All of the Defendants' false claims for refunds were based on similar false Forms 1099-OID submitted in connection with their tax returns.   These Forms 1099-OID falsely reported that financial institutions, lenders, law firms, government agencies, or other entities had withheld and paid over to the IRS interest income from accounts in their names, including mortgages, credit card accounts, and checking accounts.   Gov't Exs. 10, 12, 14, 16, 18, 20, 31, 34, 35, 38, & 80.   Representatives from every one of these entities testified at trial that their respective entities did not issue the Forms 1099-OID submitted by the Defendants, that these accounts did not generate such income, and that no such withholdings occurred from these accounts.   Certified copies of IRS records of income reported for the Defendants by third parties corroborated this testimony.   Gov't

Exs. 11, 13, 15, 17, 19, 21, 32, 36, 39, 41, & 52.

8.     The Defendants worked together and assisted each other in the filing of these false claims by mailing or hand delivering them together or for each other.   They also communicated with Curtis Morris and each other through email about their fraudulent returns and their use of fraudulent Forms 1099-OID.   *See, e.g.*, Gov't Exs. 90, 91, 92, 99, & 100.   The Defendants persisted in their efforts to collect these fraudulent refunds even after they received repeated warnings from the IRS that their claims were frivolous and would result in sanctions if not withdrawn.   *See* Gov't Exs. 22, 42, 53 (transcripts of IRS notices to Defendants).

9.      Despite the Defendants' repeated attempts to collect these fraudulent refunds, they never succeeded in getting any money from the IRS into their pockets.   As IRS Special Agent Adam Rutkowski explained, the IRS initially credited Defendant Brokaw for the refund he claimed for tax year 2008 and applied the refund amount to his outstanding tax balance for previous years, but the IRS realized its mistake and reversed that credit.

### Conduct Relevant to the Defendants' Efforts to Obstruct the Internal Revenue Laws

10.    The Defendants also worked together to engage in conduct designed to impede the IRS's efforts to collect taxes owed by themselves and others.   These efforts included mailing to the IRS and to the Department of Treasury a number of false documents which purported to pay the taxes owed by these defendants and others.   These documents had titles such as "Private Registered Bonds for Setoff," "Private Registered Indemnity Bonds," "Registered Private Offset and Discharge Bonds," and "Registered Bonded Promissory Notes," and were in amounts as high as $100 billion.   *See, e.g.*, Gov't Exs.

203-206 & 209-211.   Testimony from Treasury Department employees Kristy Morgan, Peter Lee, and Tamie Lucas proved that these documents were received by the IRS and the Department of Treasury.   Other similarly fraudulent documents the Defendants attempted to use for the same purpose were IRS documents on which they added meaningless handwritten text such as "money order" or "accepted for value."   *See, e.g.,* Gov't Exs. 215, 220, & 221.

11.     The defendants also tried to satisfy tax debts by submitting purported electronic funds transfer (EFT) instruments to the IRS and, in one case, to the District Court Clerk's Office in connection with a tax judgment entered in a civil case, *see, e.g.*, Gov't Exs. 216, 218, & 219; as bank representatives explained at trial, however, these were really just checks drawn on closed bank accounts.   Defendant Vigil demonstrated the obviously fraudulent nature of the payments purportedly submitted by the defendants in an email, where she said, "That means you write checks on the account, and the bank has to honor them or 'pay' whoever you write the checks to, but you don't have to deposit any funds in the account!!   What a deal . . . ."   Gov't Ex. 300.

12.     The defendants also attempted to impede the IRS by working together to harass and intimidate IRS employees, including Michael Pryor, Maureen Green, and Ginger Wray, who were engaged in legitimate tax collection efforts against one or more of the Defendants, as well as TIGTA Special Agent William Frankel, who was investigating the Defendants for tax-related crimes.   These efforts included preparing, mailing, and/or filing false and fraudulent liens or other documents, which falsely claimed that the Treasury employees owed the Defendants amounts of money ranging from tens of

millions of dollars to billions of dollars, *see, e.g.* Gov't Exs. 212, 213, 264, & 320-326, mailing documents to at least one Treasury employee's home, Gov't Ex. 211, and making other efforts to obtain the home addresses of Treasury employees, *see* Gov't Exs. 267, 268, & 272.

13.     The evidence described above demonstrated the Defendants' intent to obstruct the due administration of the internal revenue laws, but the evidence also demonstrated an actual effect on the administration of those laws.   Multiple IRS and Treasury employees testified about the multiple layers of processing required to deal with the Defendants' numerous fraudulent and harassing mailings.   Special Agent Frankel also testified that his investigation was slowed by the time needed to address the various fraudulent documents the Defendants sent to him after they learned that he was the affiant on search warrants for their residences.   Additionally, although this evidence was not introduced at trial, this Court can take judicial notice of the fact that the Defendants filed documents accusing Special Agent Frankel, Magistrate Judge Michael Watanabe, and others with crimes associated with the issuance and execution of those search warrants in the case numbers associated with those warrants, 11-sw-05438-MJW [Doc. #s 7, 19] and 11-SW-05439-MJW [Doc. #s 7, 15, 16].

14.     The Defendants have continued their efforts to obstruct the proceedings throughout the pendency of this case by repeatedly filing baseless motions asserting a lack of jurisdiction, bias by the Court, conspiracies involving the entire Department of Justice, and other similar attacks, even after the Court informed the Defendants that such motions were frivolous.   Once the trial began, the Defendants repeatedly disregarded

orders from the Court concerning their own conduct during the trial.

## SENTENCING GUIDELINE COMPUTATIONS[1]

15.     The Defendants' convictions related to filing false claims for refunds group with each other, as do the Defendants' convictions related to corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws.   U.S.S.G.§3D1.2(b).  These sets of counts further group together because the offense level is determined largely on the basis of the total amount of harm or loss, *id.* §3D1.2(d), or because the obstruction counts embody conduct treated as an adjustment to the guideline applicable to the false claims counts.

16.     The applicable guideline for all of the counts is Section 2T1.1.   *See id.* §2B1.1(c)(3); *United States v. Hill*, 683 F.3d 867, 869 (7th Cir. 2012) (holding that §2T1.1 is the applicable guideline for cases involving fraudulent claims for tax refunds).   The loss amount is the total amount of loss that would have resulted had the offense been successfully completed.   U.S.S.G. §2T1.1(c)(1), (4); *United States v. Morris,* 573 Fed. App'x 712, 726 (10th Cir. 2014) (district "court correctly applied 22-level enhancement based on intended loss" of over $21 million); *United States v. Gassaway,* 81 F.3d 920, 922 (10th Cir. 1996) ("tax loss calculation [is] dependent upon intended rather than actual loss") (citation omitted).   The total amount of the false refunds claimed is $23,691,935.   *See* ¶ 6, *supra*.   There was an additional intended loss of at least $7,272,680.78, based on the additional tax debts that the Defendants attempted to avoid through their obstructive conduct.   *See* Gov't Ex. 218 (Brokaw $522,692.48 EFT for his tax debt),

---

[1] The November 1, 2014 Sentencing Guidelines Manual applies.

Gov't Exs. 215, 245, 254, (additional documentation pertaining to Brokaw's tax debt); Gov't Ex. 219 (Brokaw $5,978,973.00 EFT for C.L.'s tax judgment); Gov't Ex. 216 (Pawelski $132,000.00 EFT for his tax debt), Gov't Exs. 202 and 221 (additional documentation pertaining to Pawelski's tax debt); Gov't Ex. 211 (Pawelski's Registered Bonded Promissory Note re N.B.'s $614,040.92 tax debt); Gov't Ex. 210 (Vigil's Registered Bonded Promissory Note re: her $24,974.38 tax debt and additional documentation pertaining to her tax debt).   The base offense level, based on an intended loss of more than $20 million, is 28.   U.S.S.G. §2T4.1(L).

17.   The full amount of the intended loss is attributable to each Defendant because relevant conduct includes all reasonably foreseeable acts and omissions of co-defendants in furtherance of the jointly undertaken criminal activity.   §1B1.3(a)(1)(B); *see United States v. Thompson,* 518 F.3d 832, 867 (10th Cir. 2008) ("[t]ax loss is determined from the reasonably foreseeable conduct of all co-actors, not just the defendant's own conduct") (citation omitted); *United States v. Allen,* 533 Fed. App'x 406, 411 (5th Cir. 2013) ("the point of §1B1.3 is to hold a defendant responsible for the conduct of '*others.'*") (emphasis in original); *United States v. De La Cruz Suarez,* 601 F.3d 1202, 1221 (11th Cir. 2010) ("[i]f a defendant is aware of the scope of a conspiracy outside of his individual actions, he may be held accountable for actions by co-conspirators even though he was not personally involved").

18.   There is a 2-level upward adjustment because the Defendants willfully attempted to obstruct or impede the administration of justice with respect to the investigation and prosecution of their offenses.   U.S.S.G. §3C1.1.   Conduct that supports this

8

enhancement includes the various fraudulent documents sent to and claims made against TIGTA Special Agent Frankel, *see* Gov't Exs. 320-326, as well as the additional acts described in paragraphs 13 and 14, *supra*.

19. The Defendants have never admitted that they committed a crime. Additionally, because they put the government to its burden of proof by denying essential elements of the offense at trial, the adjustment for acceptance of responsibility does not apply to the Defendants. U.S.S.G. §3E1.1, App. N.2.

20. Based on the calculations described above, each Defendant has an adjusted offense level of 30.[2]

21. The defendants do not appear to have any criminal history, which would place them in Criminal History Category I.

22. The range of imprisonment, based on an offense level of 30 and Criminal History Category I, is 97-121 months. *Id.* Chap. 5, Pt. A.

23. The fine range, based on based an offense level of 30 and Criminal History Category I, is $15,000 to $150,000. *Id*. §5E1.2(c)(3).

24. The supervised release range is 1 to 3 years. *Id*. §5D1.2(a)(2).

---

[2] Even if the Court were to conclude that the more appropriate Guideline is Section 2T1.9, the adjusted offense level would be the same. In that case, the Defendants would still have a base offense level of 28, based on an intended loss of more than $20 million, U.S.S.G. §§2T1.9(a)(1), and would receive a 2-level enhancement because their conduct "was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue," *id.* §2T1.9(b)(2). The Defendants encouraged others to violate the internal revenue laws by sending emails to others containing information and instruction pertaining to the Form 1099-OID scheme. *See* Gov't Exs. 19, 91, and 300. The Defendants also provided information and instruction to others, including a TIGTA Special Agent acting undercover, via email regarding how to engage in the same type of obstructive conduct for which the Defendants were convicted. *See* Gov't Exs. 301 and 230-232 (Gov't. Exs. 230-232 were not admitted at trial. Copies of these exhibits are attached).

## SECTION 3553(a) FACTORS

25.     The government intends to file a supplemental sentencing statement addressing the factors outlined in Title 18, United States Code, Section 3553(a) as necessary after the pre-sentence investigation report has been prepared and more information about the defendants' histories and characteristics is available.

Respectfully submitted this 21st day of November, 2014,

                                JOHN F. WALSH
                                United States Attorney


                                s/ Matthew T. Kirsch
                                MATTHEW T. KIRSCH
                                MARTHA A. PALUCH
                                Assistant U.S. Attorneys
                                1225 17th Street, Suite 700
                                Denver, CO 80202
                                Telephone 303-454-0100
                                Facsimile 303-454-0402
                                Email: martha.paluch@usdoj.gov
                                            matthew.kirsch@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of November, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.   I also emailed the foregoing to the following e-mail addresses:

George Thomas Brokaw, Pro Se
tombrokaw33@msn.com

John J. Pawelski, Pro Se
Johnski9999@gmail.com

Mimi M. Vigil, Pro Se
Rubyred5050@gmail.com

                                              s/ Grazy Banegas
                                              Grazy Banegas
                                              Legal Assistant
                                              United States Attorney's Office
                                              1225 17th Street, Suite 700
                                              Denver, CO 80202
                                              303 454-0100
                                              Fax: 303 454-0402
                                              Dequesa.boucher@usdoj.gov