1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 13-cr-0392-CMA-2
3
   UNITED STATES OF AMERICA,
4
       Plaintiff,
5
   vs.
6
   JOHN J. PAWELSKI,
7
       Defendant.
8
   ------------------------------------------------------------
9
                 REPORTER'S TRANSCRIPT
10                    (Sentencing)
11
   ------------------------------------------------------------
12      Proceedings before the HONORABLE CHRISTINE M.
13 ARGUELLO, Judge, United States District Court for the
14 District of Colorado, commencing at 3:49 p.m., on the 10th
15 day of February, 2014, in Courtroom A602, United States
16 Courthouse, Denver, Colorado.
17
                       APPEARANCES
18
        MATTHEW KIRSCH and MARTHA A. PALUCH, Assistant U.S.
19 Attorneys, 1225 17th Street, Suite 700, Denver, Colorado
   80202, appearing for the plaintiff.
20
        JOHN PAWELSKI, Appearing Pro Se.
21

22

23            MARY J. GEORGE, FCRR, CRR, RMR
            901 19th Street, Denver, Colorado 80294
24         Proceedings Reported by Mechanical Stenography
               Transcription Produced via Computer
25

P R O C E E D I N G S

1   (Call to order of the court at 3:49 p.m.)

THE COURT:  Court calls criminal case No. 13 cr 00392-CMA-2, encaptioned United States of America versus John J. Pawelski.  Would the Government please enter their appearances.

MR. KIRSCH:  Matthew Kirsch and Martha Paluch for the United States, Your Honor, along with IRS Special Agent Rogkowski.

THE COURT:  Good afternoon.

MR. KIRSCH:  Good afternoon.

THE COURT:  Mr. Pawelski, would you enter your appearance.

THE DEFENDANT:  Yes.  I am John Joseph Pawelski.

THE COURT:  Good afternoon.

THE DEFENDANT:  And before addressing the presentencing report, I wish to address the Court.

THE COURT:  Actually, we will go through it at -- at the right point in time, I will allow you to do a full allocution and address me however you wish to.

THE DEFENDANT:  Very well.

THE COURT:  All right.  For the record, the Court also notes that Officers Robert Ford and Gary Burney representing the United States Probation Office are also in attendance at this hearing.  Good afternoon.

1          PROBATION OFFICER:  Good afternoon, Your Honor.

2          PROBATION OFFICER:  Good afternoon.

3          THE COURT:  If I could make this work.  All right.

4          This sentencing hearing was originally scheduled

5     for 3:30 on January 27th, 2015, but Mr. Pawelski, who was

6     free on bond, failed to appear as ordered by the Court

7     after his conviction on November 11th, 2014.  The Court

8     ordered a warrant for his arrest be issued and the marshal

9     arrested him and brought him in for sentencing on January

10    28th, 2015.

11         Because the defendant requested more time to

12    review the presentence investigation report, this Court

13    continued the sentencing hearing to today.  The record

14    shows that after a five-day jury trial on November 11th,

15    2014, Mr. Pawelski was found guilty and convicted of one

16    count of conspiracy to file false claims for refund, four

17    counts of false claims for refund, one count for conspiracy

18    to corruptly endeavor to object to or impede the due

19    administration of the IRS laws, one count of corruptly

20    endeavoring to obstruct or impede the due administration of

21    the IRS laws.

22         This sentencing hearing then -- strike that.

23         I have received and reviewed the full presentence

24    investigation report dated December 24th, 2014, including

25    all addenda.  I also reviewed document No. 387, the

1    defendant's objections, document No. 372, the Government's

2    sentencing statement, and document No. 385, Government's

3    supplemental sentencing statement.

4            At the last hearing, I believe I did strike

5    documents No. 395, 394, and 398 as filings which are

6    irrelevant to this case.  I also struck as an inappropriate

7    filing in this case document No. 399.

8            On February 2d, 2015, the defendant was provided

9    with a printed copy of his presentence investigation

10   report, recommendation, and addendum by U.S. probation

11   officer Gary Burney at the Clear Creek County Jail in

12   Georgetown, Colorado.

13           Mr. Pawelski, did you review the presentence

14   investigation report?

15           THE DEFENDANT:  I did.

16           THE COURT:  Do you understand the contents of that

17   report?

18           THE DEFENDANT:  No, I don't.

19           THE COURT:  All right.  Do -- other than the

20   written filing that you have, do you have questions making

21   objections to 387, do you have other objections that you

22   wish to make at this point or any questions you need to ask

23   me?

24           THE DEFENDANT:  Well, yes, ma'am.  One of the

25   identifying data is obviously incorrect.  I am not the

1    statutory name, John J. Pawelski.  My name is John Joseph

2    Pawelski, and I'm a natural man.  I have flesh and blood

3    running through my body.  And I believe Mr. John J.

4    Pawelski, or whatever that would be called, does not.  I am

5    not the surety for that entity and I am not the trustee.

6    So that is one issue that is incorrect.

7            I don't know how we will be able to move back and

8    move forward without getting that corrected.

9            THE COURT:  All right.  Any other objections that

10   you have?

11           THE DEFENDANT:  Well, the Social Security number

12   is related to the statutory entity.  I do not have a Social

13   Security number, I have an alien resident -- residence

14   number.  As the data that you received in the registered

15   mail clearly shows, I revoked the election of my U.S.

16   citizenship with the IRS, and that should be changed and

17   approved.  If not under the database now, it should be

18   shortly.  So two objections there.

19           And then there's a lot of things inside the data

20   that -- you know, the report that are either inconsistent

21   or un- -- un-understandable, not understandable.

22           THE COURT:  All right.  Well, I -- if you don't

23   understand, let me know and I'll try to explain those to

24   you.

25           THE DEFENDANT:  Okay.  Well, as you know, and as

1   I've presented to the Court multiple times, Title 18 was

2   never ratified by the Congress; therefore, that is not

3   available as Colorado law.  And from what I understand, I

4   cannot be -- or John J. Pawelski cannot be convicted of

5   Colorado law.

6          The Title 26 count gets its authorization from

7   Title 27, which is the Bureau of Alcohol, Tobacco and

8   Firearms, which would not apply in any means to this case.

9          As I remember -- and I tried to get this, but I

10  have not received it yet -- a copy of the jury instructions

11  where you instructed the jury that if there was no funds

12  received, there was no crime, which is correct, there were

13  no funds received.  But because the jury was probably bored

14  to death, they found me guilty anyway against your

15  instructions.

16         The amount of time that you are -- or have been

17  presented here is exceeding anything that could possibly be

18  relevant.  The prosecutor did not bring forth a claimant,

19  the prosecutor did not bring forth an injured party, and

20  the prosecutor did not prove any mens rea as far as the

21  trial.  So I object to the amount of time and the

22  penalties.

23         I object to the fact that Mr. Ford said he wanted

24  to make a example out of this case, to whomever that

25  example may be out to.  Perhaps, you know, the Chicago

1      Tribune, I don't know.  But there's a lot of information in

2      here that I just don't understand and I don't think is

3      relevant to me.

4              THE COURT:  All right.  Well, your oral objections

5      are noted, but they will not affect the guideline range nor

6      will they affect the sentence that this Court imposes.

7              I have read document No. 387, which are your

8      objections to the presentence report, which essentially

9      asserts that Title 18, and now, today, you raise Title 26,

10     are unconstitutional --

11             THE DEFENDANT:  I didn't say Title --

12             THE COURT:  -- only under the 1909 statute.  Those

13     are the same type of tax protestor arguments regarding the

14     legality of the power of the Government to bring this case

15     and the power of this Court to hear it.  Those objections

16     have been overruled previously by this Court as patently

17     frivolous and legally meritless and they are so ruled

18     today.

19             THE DEFENDANT:  I object to your -- I object to

20     your terminology as a tax protestor.  I pay all taxes I am

21     legally liable to pay.

22             THE COURT:  All right.  Well, I used that as an

23     adjective, not necessarily for you but there are generally

24     tax protester arguments that we hear from people who are

25     being prosecuted all the time.

1          THE DEFENDANT:   If the law was never ratified,

2    ma'am, it is not a tax protester argument, it is a verified

3    fact.

4          THE COURT:   All right.   Mr. Kirsch, do you wish to

5    make any objections on behalf of the Government?

6          MR. KIRSCH:   No, Your Honor.   Thank you.

7          THE COURT:   All right.   The total offense level in

8    this case is 30, the defendant's Criminal History Category

9    is a I, that results in an advisory guideline range of 97

10   to 120 months of imprisonment on Count 1, 60 months on

11   Counts 8 through 11, 14 -- and 14, and 36 months on Count

12   16.   The supervised release range is one to three years and

13   the fine is in the range of 15,000 to $150,000.

14          Although there were no motions for downward

15   departure or variant sentence, the probation officer has

16   recommended that the Court downward vary to a sentence of

17   72 months of imprisonment.   I have, as part of my protocol

18   for determining whether the advisory guideline range has

19   recommended a sentencing range that is sufficient but not

20   greater than necessary to achieve the objectives of

21   sentencing, I have reviewed the presentence report, I've

22   considered the sentencing guidelines and all of the factors

23   set forth in 18 United States Code Section 3553.

24          Now, the defendant is before this Court for

25   sentencing on his first criminal conviction.   With the

1    exception of his activities against the Internal Revenue

2    Service and other related governmental agencies, it appears

3    that he has led a law-abiding lifestyle.

4         He has been a self-employed businessman for most

5    of his life.  He devotes his time to several community

6    causes.  He doesn't have any mental health or substance

7    abuse issues.  He does have a history of financial issues

8    and there are several judgments and liens against him.  He

9    does not appear to have any education or vocational needs.

10        In this case, the defendant conspired with others

11   to file false documents and claims with the Internal

12   Revenue Service.  He and others also attempted to

13   intimidate investigators and other Government officials

14   involved in the case.  And despite considerable attempts to

15   obtain moneys from the Internal Revenue Service to which he

16   was not entitled, he was never successful in receiving any

17   funds.

18        The probation officer believes that because the

19   defendants were unsuccessful in receiving illegitimate

20   refunds, that the guideline loss amount of $30 million does

21   overstate the impact of the conduct of this defendant,

22   however, this Court is concerned about several factors.

23        First, defendant Pawelski's criminal conduct that

24   gave rise to his convictions span more than four years from

25   March of 2008 to April of 2012.

1          Second, he persisted in his efforts to collect

2     fraudulent refunds even after he received repeated warnings

3     from the IRS that his claims were frivolous and would

4     result in sanctions if not withdrawn.

5          Third, he and his codefendants harassed and

6     attempted to intimidate Government employees in their job

7     functions, including submitting claims and statements

8     maintaining that these employees owed the defendants absurd

9     amounts of money.

10          Fourth, he refuses to accept any responsibility

11     for his criminal conduct.  He admits that he was trying to

12     discharge the debt he owed and save his business and

13     marriage, but he fails to acknowledge that he was using

14     fraudulent means to discharge that debt.

15          His history and characteristics suggest that he is

16     more likely to reoffend than other defendants with similar

17     records who have committed similar offenses.

18          As I stated in the last hearing, I'm not sure

19     where I really stand with respect to whether a variant

20     sentence is merited.  It does appear to me that the

21     guideline range is driven up somewhat artificially by the

22     $30 million in liens that they attempted to impose, and

23     that that may overrepresent the seriousness of the impact

24     of Mr. Pawelski's conduct.  So I'm not sure where I intend

25     to sentence at this point.

1        And with that being said, Mr. Kirsch, I will allow

2   you to make any arguments to persuade me as to where the

3   Government wants me to go.

4        MR. KIRSCH:   Thank you, Your Honor.

5        Your Honor, from the Government's perspective,

6   Mr. Pawelski is in a similar position to Mr. Brokaw.   The

7   Government believes, again, that the applicable guideline

8   range would constitute a reasonable sentence for

9   Mr. Pawelski.   The Government, likewise, believes that it

10  would also be reasonable for the Court to calculate the

11  guideline range by going four levels lower as it would do

12  if it removed the patently absurd claims that were made by

13  Mr. Pawelski and Mr. Brokaw and others.

14       If the Court chooses to do that, then the

15  Government's suggestion is that a sentence at the top of

16  that range, 78 months, would be the appropriate sentence.

17  That, again, would recognize and would impose some sanction

18  for Mr. Pawelski's conduct, which continues -- it's the

19  same conduct that continues today, that is, picking and

20  choosing pieces of statutes and pieces of laws that support

21  the position that benefits him.

22       It's the same kind of thing that he tried to do

23  when he filed the false claims for refunds, it's the same

24  kind of thing that he did when he was harassing IRS

25  employees, and it's the same kind of thing that he's trying

1    to do now in order to avoid the liability for all of those

2    criminal actions that he previously committed.

3            The Government's position is that he should be

4    sanctioned for that and we would ask for a sentence of not

5    less than 78 months imprisonment.

6            THE COURT:  All right.  Mr. Pawelski, do you wish

7    to make any statements to me on your own behalf before I

8    impose sentence?

9            THE DEFENDANT:  Well, absolutely.  The process

10   which I presented to the IRS I thought was valid, perhaps

11   naively.  I don't know where all those large numbers came

12   from.  I know Mr. Morris did some, but that was a long time

13   ago and I truly don't remember.

14           I have learned my lesson.  I have been paying for

15   this now for about seven years and definitely for the last

16   three years, ma'am.  Because of my actions, I have lost my

17   house and my marriage.  I've been lucky enough to find a

18   wonderful woman that sits behind me and she's been

19   supportive of me.  But one, I know, she would not allow me

20   to get into this any more.  The people that I was involved

21   with at the time are -- I am not involved with.  I've got a

22   new set of associates, besides Mr. Brokaw, of course.  He's

23   an old friend of mine.

24           There are -- there are a lot of things that I

25   could have done.  I tried to cancel the signatures on the

1    documentation that were sent -- was sent to me.  I sent

2    letters to the IRS asking them if this was a valid process.

3    I never got responses.  I got a frivolous letter saying,

4    It's frivolous.  I didn't know what that meant.  It never

5    explained that the documents were received, these OID

6    documents, were somehow ruled internally that they were

7    being looked at differently than others, if you will.

8    Didn't know that.  Didn't know why they were looked at

9    differently, because I sent letters and asked why.  And I

10   never got responses from those letters.

11        The presumption in the letter was that if you

12   don't respond to me in 30 days, I will have to assume it's

13   correct because how long do I need to wait?  I never got a

14   letter back whether it was 30 days, 180 days, five years,

15   10 years from now.  I never got a letter.  So I made the

16   assumption those were correct.

17        As far as the documents to discharge the debt, I

18   read and studied, over a matter of two years, Title 12 and

19   Title 31, and went to multiple seminars of people that

20   claimed they had the knowledge of how to do that.  Based on

21   my study and based on the seminar data, I felt those were

22   correct.  Mr. Kirsch is claiming they're not, but he's

23   never proven to me that they were not.

24        So everybody here works for the federal

25   government.  I do not.  Everybody here gets a paycheck from

1    the federal government.  I do not.  All I wanted to do,

2    ma'am, is discharge the debt, clear it, because the way

3    it's created through the Federal Reserve System, my

4    opinion, I felt that that was the right way to do it

5    because I did not have the federal reserve notes in my

6    checking account to be able to do that.

7         So asking me to spend six and a half years in

8    prison for multiple mistakes -- I agree, multiple --

9    multiple mistakes, I believe is very, very excessive.  And

10   I just can't see myself consenting to that and accepting

11   that as a valid and true and correct punishment for my --

12   for what I am alleged doing.

13        THE COURT:  All right.  As a result of the United

14   States Supreme Court's rulings in *United States v. Booker*

15   and *United States v. Fanfan*, the United States Sentencing

16   Commission Guidelines have become advisory to this Court.

17   While this Court is not bound to apply those guidelines, it

18   has consulted them and taken them into account, along with

19   the sentencing factors identified in 18 United States Code

20   Section 3553(a).

21        The Court has already ruled on the defendant's

22   oral objections this morning -- or this afternoon, and

23   those that he filed in the documentation previously.  His

24   objections really pertain to this Court's jurisdiction and

25   the Government's jurisdiction over him.  For the reasons

1    previously stated, both in writing and orally in previous

2    orders, the defendant's objections are overruled.

3         Neither the Government nor the defendant has

4    challenged any other aspect of the presentence report,

5    therefore, the remaining factual statements and guideline

6    applications are adopted without objection as the Court's

7    finding of fact concerning sentencing.

8         The Court finds that the total offense level is

9    30, the defendant's Criminal History Category is I, which

10   results in an advisory imprisonment range of 97 to 120

11   months, and a fine range of 15,000 to $150,000.  The

12   supervised release range is one to three years.

13        The Court does agree with the probation officer's

14   recommendation that the advisory guideline range that comes

15   about as a result of the loss calculation, taking into

16   account those claims that are patently outrageous, the $22

17   million and the $5.9 million fraudulent EFTs, does

18   overstate the amount of time that should be in that

19   calculation.  The Court will remove those amounts, and that

20   reduces the offense level set forth in tax table at United

21   States Sentencing Guideline Section 2T4.1 by four levels

22   from a level 28, which is intended for loss of more than 20

23   million, to a level 24, which is intended loss of more than

24   2.5 million.  And that yields an adjusted offense level of

25   26.  This results in a guideline range of 63 to 78 months,

1   which does seem more appropriate than the 97 to 120 months

2   that was calculated under the advisory guidelines.

3          For the reasons argued by the probation officer

4   and those stated by this Court, the Court finds that when

5   the history and characteristics of the defendant and the

6   nature and circumstances of this offense are juxtaposed

7   with the goals of sentencing pursuant to 18 United States

8   Code Section 3553(a), a variant sentence is warranted in

9   this case.

10          Pursuant to the Sentencing Reform Act of 1984, it

11   is the judgment of the Court that the defendant, George

12   Thomas Pawelski [sic], is hereby committed to the custody

13   of the Bureau of Prisons to be imprisoned for a term of 78

14   months on Count 1, and a term of 60 months on each of

15   Counts 8, 9, 10, 11, and 14, and a term of 36 months on

16   Count 16, with all such terms of imprisonment to be served

17   concurrently.

18          Upon release from imprisonment, the defendant

19   shall be placed on supervised release for a term of three

20   years.  This term consists of terms of three years on each

21   of Counts 1, 8, 9, 10, 11, and 14, and a term of one year

22   on Count 16.  All such terms also to run concurrently.

23          Within 72 hours of release from the custody of the

24   Bureau of Prisons, the defendant shall report in person to

25   the probation office in the district to which the defendant

1    is released.  While on supervised release, the defendant

2    shall not commit another federal, state, or local crime,

3    shall not possess a firearm as defined in 18 United States

4    Code Section 921, and shall comply with the standard

5    conditions that have been adopted by this Court.

6         The defendant shall not unlawfully possess a

7    controlled substance.  The defendant shall refrain from any

8    unlawful use of a controlled substance.  The Court waives

9    the mandatory drug testing requirements of 18 United States

10   Code Section 3583(d), because the presentence report

11   indicates a low risk of future substance abuse by the

12   defendant.

13        The defendant shall cooperate in the collection of

14   DNA as directed by the probation officer.

15        The Court finds that the following special

16   conditions of supervision are reasonably related to the

17   factors set forth in 18 United States Code Section 3553(a)

18   and 3583(d).  Further, based on the nature and

19   circumstances of this offense -- these offenses, and the

20   history and characteristics of this particular defendant,

21   the following conditions do not constitute a greater

22   deprivation of liberty than reasonably necessary to

23   accomplish the goals of sentencing.

24        First, the defendant shall make payment on the

25   financial obligation that remains unpaid at the

1    commencement of supervised release.  Within 60 days of

2    release from confinement the defendant shall meet with the

3    probation officer to develop a plan for the payment of the

4    fine.  This plan will be based upon the defendant's income

5    and expenses.  The plan will be forwarded to the Court for

6    review and approval.

7            Second, the defendant shall work with the

8    probation officer in development of a monthly budget that

9    shall be reviewed with the probation officer quarterly.

10           Third, the defendant shall not be employed in a

11   fiduciary position.

12           Fourth, the defendant shall not engage in any

13   business activity unless said activity is operating under a

14   formal registered entity, such as a corporation, limited

15   liability company, limited liability partnership, limited

16   liability limited partnership, sole proprietorship, or

17   general partnership.

18           Fifth, the defendant shall not register any new

19   business entity, foreign or domestic, without the advanced

20   written approval of the probation officer.

21           Sixth, the defendant shall maintain business

22   records for any business activities in which he engages.

23   The defendant shall provide all requested documentation to

24   the probation officer regarding any of his business

25   activities as requested by the probation officer.

1    Seventh, the defendant shall document all income

2    or compensation generated or received from any source and

3    provide such information to the probation officer as

4    requested.

5    Eighth, the defendant shall comply with all legal

6    obligations associated with the Colorado Department of

7    Revenue and the Internal Revenue Service regarding federal

8    and state income taxes.  This includes resolution of any

9    tax arrearages, as well as continued compliance with

10    federal and state laws regarding the filing of taxes.

11    Ninth, the defendant shall provide to the

12    probation officers -- officer copies of all correspondence

13    the defendant mails or causes to be mailed to the Colorado

14    Department of Revenue, the Internal Revenue Service, and

15    the Department of Treasury.

16    The defendant shall pay a total fine of $15,000,

17    and a special assessment of $700, which is $100 per count.

18    The Court has determined that the defendant does not have

19    the ability to pay interest on the fine and it is ordered

20    that no interest shall be paid on the fine.  Both the fine

21    and special assessments are due and payable immediately.

22    Now, Mr. Pawelski, you are advised that you have

23    the right to appeal this sentence.  If you desire to

24    appeal, a notice of appeal must be filed with the Clerk of

25    the Court within 14 days after entry of judgment or your

1    right to appeal will be lost.  If you are not able to

2    afford an attorney for an appeal, the Court will appoint

3    one to represent you.  And if you request, the Clerk of the

4    Court must immediately prepare and file a notice of appeal

5    on your behalf.

6           Now, as I told Mr. Brokaw, Mr. Pawelski, I take my

7    task of sentencing very seriously, and I often lose sleep

8    over it.  And I did lose sleep over this to figure out what

9    was an adequate sentence.  I take it seriously because I

10   understand that I have your life in part in my hands and I

11   want to be fair to you.  But as a judge, I also have an

12   obligation to society and to the public to protect it from

13   further crimes by you and by others, to promote respect for

14   the laws of the United States, to provide a punishment that

15   is just, but one that is also going to deter you and others

16   from committing similar criminal conduct.  And I do believe

17   that a sentence -- a variant sentence was merited in this

18   case, but I also believe that a sentence at the top of that

19   adjusted guideline range of 78 months was a sentence that

20   is sufficient but not greater than necessary to achieve the

21   objectives of sentencing.

22          So with that being said, is there any other matter

23   to be brought before this Court?

24          MR. KIRSCH:  No.  Thank you, Your Honor.

25          THE DEFENDANT:  Ma'am, I believe that you have

1   made a gross miscalculation in what I should be punished

2   with.  This -- this is not a crime of -- against anybody.

3   It's against, you know, this IRS agency, which is a bureau

4   for the Treasury, a collection agency.  No monies were

5   received.  No benefit was received by me, just heartache

6   and headache.

7            I would be willing to pay a fine, somehow pay a

8   fine over the next five or 10 years, and do some probation

9   and much community service if that would be necessary.

10  I'll be glad to abide by the filing of the tax forms, if

11  that's something that you believe would assist me.

12           Putting me in prison for that much time will not

13  do my family or myself or even you guys any good.  So I --

14  I object to that sentencing, I do not consent to it.  And I

15  believe that you are incorrect in what you are doing.

16           THE COURT:  Well, Mr. Pawelski, I don't understand

17  why you and your codefendants have proceeded as you have

18  proceeded.  Even today, you say that you've learned your

19  lesson, but you still continue to insist that the United

20  States Government has no authority over you, but you take

21  advantage of the laws here in the United States when they

22  benefit you.  So I don't understand why you do what you do.

23  All I can do is administer the law as I see fit.

24           THE DEFENDANT:  I never said that the United

25  States Government does not have authority over me.

1          THE COURT:  You told me I have no authority over

2     you, so I don't understand that --

3          THE DEFENDANT:  I did not say that.

4          THE COURT:  I hereby remand you to the custody of

5     the United States Marshal for the District of Colorado.  I

6     wish you the best of luck and I hope I don't ever have to

7     see you in my courtroom again.

8          The Court will be in recess.

9          THE DEFENDANT:  Well, and I will ask for an

10    appeal.

11        (Proceedings concluded at 4:19 p.m.)

12

13                    *     *     *     *     *

14                    REPORTER'S CERTIFICATE

15

16        I certify that the foregoing is a correct transcript

17    from the record of proceedings in the above-entitled

18    matter.

19        Dated at Denver, Colorado, this 29th day of May, 2015.

20

21

22

23        _                                              _

24                    MARY J. GEORGE, FCRR, CRR, RMR

25