Case No. 1:13-cr-00392-CMA   Document 437-1   filed 06/02/15   USDC Colorado   pg 1 of 53
Case 1:13-cr-00392-CMA   Document 437   Filed 02/25/15   USDC Colorado   Page 1 of 258

1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 13-cr-00392-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.   GEORGE THOMAS BROKAW,
2.   JOHN J. PAWELSKI, and
3.   MIMI M. VIGIL,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT
(Jury Trial - Day 1)**
_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 8:46 a.m. on the 3rd
day of November, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

**FOR DEFENDANT BROKAW:**
Pro Se.
**FOR DEFENDANT PAWELSKI:**
Pro Se.
**FOR DEFENDANT VIGIL:**
Pro Se.

Attachment

1                    **NOVEMBER 3, 2014**

2          (Proceedings commence at 8:46 a.m.)

3          THE COURT:  You may be seated.

4          All right.  The Court calls Criminal Case No.

5    13-cr-00392-CMA, encaptioned United States of America v.

6    George Thomas Brokaw, John J. Pawelski, and Mimi M. Vigil.

7          Would the parties please enter your appearances.

8          MR. KIRSCH:  Good morning, Your Honor.  Matthew

9    Kirsch and Martha Paluch for the United States.  We also

10   have at counsel table with us the person designated as our

11   advisory witness, IRS Special Agent Adam Rutkowski.

12         THE COURT:  Good morning.

13         DEFENDANT BROKAW:  Judge, my name is private.  On

14   and for the record, my name is private.  In regards to

15   this all capital letters name on the birth certificate

16   spelled G-E-O-R-G-E, all capital letters name, Thomas,

17   T-H-O-M-A-S, all capital spelling, Brokaw, B-R-O-K-A-W,

18   all capital letters, I am the agent for the general

19   executor office for the trust.

20         THE COURT:  All right.  Thank you very much.

21         Mr. Pawelski?

22         DEFENDANT PAWELSKI:  My name is also private.  On

23   and for the record, my name is private.  In regards to the

24   all capital letters name on the birth certificate spelled

25   capital J-O-H-N, capital J., capital P-A-W-E-L-S-K-I, I

Attachment

1    this morning to get here on time.

2         We have a number of motions that we need to deal

3    with.  First will be Mr. Pawelski's motion, No. 315,

4    Motion to Terminate Counsel Representation, Subpoena

5    Orders, and Investigators.  Mr. Pawelski, I have gone over

6    several times with you the dangers and disadvantages of

7    representing yourself.  You clearly indicated that first

8    you didn't want counsel, then last time you were here you

9    wanted Mr. Stuckey appointed only to provide you guidance

10   with respect to subpoenas and other matters preparing for

11   court.

12        At this point I assume you are asking for me to

13   excuse him or terminate him even as advisory counsel; is

14   that correct.

15        DEFENDANT PAWELSKI:  Correct.

16        THE COURT:  That motion is granted.  Mr. Stuckey is

17   released from his services to represent.  I will not go

18   through another Faretta colloquy because I have done that

19   several times.

20        Mr. Stuckey?

21        MR. STUCKEY:  May I be excused, Your Honor?

22        THE COURT:  You are excused.

23        That motion also requested that I terminate the

24   orders for subpoenas and the investigator request.  I

25   don't know if you mean to withdraw them.  I had already

Attachment

1    courtroom.  You cannot leave.

2           Sir, please stop.  They cannot leave.

3           THE COURT:  Excuse me, ladies and gentlemen.

4           DEFENDANT BROKAW:  Defendants are on the table,

5    Judge.

6           THE COURT:  All right.  Let the record reflect that

7    the defendants have decided to leave the courtroom.

8           DEFENDANT PAWELSKI:  A claimant or an injured party

9    in this case --

10          (Defendants are removed from the courtroom.)

11          THE COURT:  All right.  Ladies and gentlemen, we

12   will continue.

13          Once voir dire starts, I will be asking you a

14   series of yes or no questions.  What I need you to do is

15   if you would answer yes, I need to you raise your hand,

16   then I will go one by one.  We will answer the questions.

17   And so I will call on one, then say who else raised their

18   hands, and we will continue that way.

19          There is a microphone here, and there is a

20   microphone down there.  So I would ask the juror closest

21   to the microphone here and over there, if you can help and

22   pass the microphone around so that we won't have to delay

23   a long time.

24          I do need you to speak into the microphone because

25   Ms. Martinez has to hear everything being said, okay.

```
 1              (A break is taken from 11:18 a.m. to 11:36 a.m.)

 2              (The following is had in open court, outside the

 3      hearing and presence of the prospective jurors.)

 4              THE COURT:  You may be seated.

 5              All right.  Back in session.

 6              We have conducted the questioning of the jurors.

 7      The Court will note for the record that the defendants,

 8      Brokaw, Pawelski, and Vigil are back in the courtroom

 9      after having walked out and being taken to the holding

10      cell next door.

11              Now, Mr. Brokaw, Mr. Pawelski and Ms. Vigil, in

12      prior court proceedings, you all have insisted I terminate

13      your appointed counsel and allow you to proceed pro se.

14      Because you have the right to waive the assistance of an

15      attorney and represent yourself, following a full colloquy

16      under Farretta v. California, I did allow you to proceed

17      pro se.

18              I did not appoint you stand-by counsel because you

19      indicated you did not want stand-by counsel.  Mr. Pawelski

20      was the only one who wanted counsel.  He only wanted

21      advisory counsel.  I did appoint him advisory counsel, but

22      this morning -- last week he chose to file a motion, and

23      this morning I granted his motion to dismiss advisory

24      counsel.

25              Now, right after we brought the jury in this
```

Attachment

```
 1    morning, you all three chose to voluntarily absent

 2    yourselves from this trial proceeding.  You attempted to

 3    walk out the courtroom doors.

 4

 5

 6         DEFENDANT VIGIL:  I was under duress.  I take

 7    exception.  That was under duress.

 8         THE COURT:  Ms. Vigil, you can have your say at the

 9    end when I finish, but do not interrupt me again.

10         You chose to walk out the door.  I told you to --

11    you could not leave the courtroom, so you were taken to

12    the holding cell next door.  You can hear next door.  I

13    had told you that before, but you cannot see what is going

14    on in this courtroom.

15         Now, we are now at the stage in jury selection

16    where you would be able to strike 11 jurors for any

17    reason.  I hope you have changed your mind and you intend

18    to participate in this trial.  My question to you is, do

19    you want to participate in the peremptory challenges of

20    the jurors, yes or no?

21

22

23         DEFENDANT VIGIL:  I do not consent to the jury

24    trial in the first place.

25         THE COURT:  All right.  So that is a no.
```

Attachment

Case 1:13-cr-00392-CMA   Document 437   Filed 02/25/15   USDC Colorado   Page 110 of 218

110

1

2

3          DEFENDANT VIGIL:  I wish to be compensated for a

4   hundred thousand dollars in redemption.

5          THE COURT:  Mr. Brokaw?

6          DEFENDANT BROKAW:  I do not consent to a jury

7   trial.

8          THE COURT:  You do not wish to participate in jury

9   selection?

10          DEFENDANT BROKAW:  I do not consent to be surety

11   for the trust.

12          THE COURT:  All right.  Mr. Pawelski?

13          DEFENDANT PAWELSKI:  I do not consent to any type

14   of trial, whether it be jury or by the judge.  I am not

15   the surety for the artificial person.  You are the

16   trustee.  You have the power and the ability to settle and

17   close this matter.

18          THE COURT:  Now, do you want to be present in the

19   courtroom for the trial, or do you wish to continue to be

20   held in the holding cell next door?

21          DEFENDANT PAWELSKI:  I do not consent to be

22   anywhere in this courtroom.

23          THE COURT:  Are you going to be disruptive in this

24   trial as you were when the jury was brought in?

25          DEFENDANT BROKAW:  You have the right, Judge, as

Attachment

Case 1:13-cr-00392-CMA   Document 435-1   Filed 06/02/15   USDC Colorado   Page 111 of 218

1   trustee, to resolve this matter and dismiss it right now.

2        THE COURT:  Do you understand that by refusing to

3   participate in trial, there is going to be no one to

4   present or argue your side during the entire trial?  There

5   was no one present to represent you during jury selection,

6   although I did all of the questioning with the exception

7   of some minor matters that Mr. Kirsch asked of the jury.

8        I am giving you the opportunity now to participate

9   in the peremptory challenges for this jury.  You are

10   indicating to me you do not wish to participate in that.

11   There is going to be no one to call witnesses for you, to

12   question witnesses against you, or to present evidence on

13   your own behalf.

14        I am not sure what you want to do with respect to

15   whether you intend to testify, but if you are absent from

16   the trial, that is not going to happen, either.  There is

17   going to be no one to object to the evidence submitted by

18   the Government.  There is going to be no one to provide

19   your objections on the jury instructions that I am going

20   to give to the jury.  There is not going to be anyone who

21   is going to be making closing argument on your behalf or

22   to object to any improper argument by the prosecutor.  And

23   there is no one here to ensure any errors committed during

24   trial are properly preserved for appellate review later by

25   a higher court.

Attachment

 1      So do you understand the dangers and disadvantages

 2   of your refusing to participate in this trial?

 3      DEFENDANT BROKAW:  I don't understand why I am

 4   here, because I don't consent to it.

 5

 6

 7      DEFENDANT VIGIL:  We do not understand or stand

 8   under this Court's jurisdiction.

 9      THE COURT:  I understand that is your position.

10   You know my position.  I have ruled on those matters.  Are

11   you continuing to refuse to participate in this trial?

12

13

14      DEFENDANT VIGIL:  I do not consent.  I do not

15   consent to be the surety for the artificial person.

16      DEFENDANT BROKAW:  I do not consent to be the

17   surety for the artificial person, either.

18      DEFENDANT PAWELSKI:  I do not consent to be surety

19   for the artificial person.

20      THE COURT:  The Court recognizes a criminal

21   defendant who has completely invoked the right to appear

22   pro se may mount a defense consisting of nothing more than

23   a protest against the Court's legitimacy and refusal to

24   attend trial, and he has no Sixth Amendment right to be

25   protected from the prejudice that may result.

Attachment

1        *Clark v. Perez*, 510 F.3d 382, Second Circuit 2008,

2    also *United States v. Lawrence* 161 F.3d 250, Fourth

3    Circuit, 1998.  There are a number of other cases.  In

4    *McKaskle v. Wiggins*, 465 U.S. 168, 1984, the United States

5    Supreme Court stated that "participation by stand-by

6    counsel without the defendant's consent should not be

7    allowed to destroy the jury's perception that the

8    defendant is representing himself."

9        Also in *Faretta*, 422 U.S., at 820, the Supreme

10   Court stated that "the language and spirit of the Sixth

11   Amendment contemplates that counsel, like the other

12   defense tools guaranteed by the amendment, shall be an aid

13   to a willing defendant, not an organ of the state

14   interposed between an unwilling defendant and his right to

15   defend himself personally."

16       These defendants have the right to represent

17   themselves in light of their decision to refuse to

18   participate in this trial, and they have previously

19   adamantly refused to allow this Court to appoint any

20   counsel to represent them.  And the Court is reluctant to

21   act on its own in a way that is contrary to the wishes of

22   these defendants.

23       The Second Circuit has stated that "just as the

24   district court should not compel a defendant to accept a

25   lawyer she does not want, they should not interfere with

Attachment

1    the defendant's chosen method of defense."   Torres v.

2    United States, 140 F.3d 392, 1998.

3           Similarly, the Fourth Circuit has held that a

4    defendant who represents himself and is present at the

5    beginning and end of his trial can be permitted to absent

6    himself voluntarily from trial during the period between

7    the calling of the case and the return of the verdict.

8    United States v. Lawrence, 161 F.3d 250, Fourth Circuit,

9    1998.

10          In Lawrence, the Court stated that "because the

11   defendant was present at the beginning of his trial and

12   voluntarily absented himself, there is no error" in

13   allowing him to be absent.

14          Now, I guess I will ask you one more time, are you

15   all certain that you want to continue to refuse to

16   participate in this trial?

17          DEFENDANT PAWELSKI:  I take exception to any type

18   of trial, any type of hearing here in this building.  You

19   are the trustee.  You have the power to do the settlement

20   of this case.

21          DEFENDANT BROKAW:  Likewise, I take exception to a

22   trial and any hearing in this building.  And as trustee,

23   you have the power and the authority to dispose of this

24   case right now, Judge.

25

Attachment

 1

 2          DEFENDANT VIGIL:  I also take exception.  I am the

 3   beneficiary of the trust and I am appointing you as the

 4   trustee to settle and close this case.

 5          THE COURT:  All right.  The defendants have each

 6   previously knowingly and voluntarily exercised their

 7   respective rights under the case of Faretta and its

 8   progeny to represent themselves in these proceedings.  The

 9   defendants are each now asserting their right not to

10   participate in this trial and refusing to allow this Court

11   to have them in this trial.

12          The Court has made inquiry of the defendants

13   regarding their refusals, and has advised the defendants

14   of the risks and limitations of refusing to participate in

15   this trial.  The Court finds that the defendants;

16   Mr. Brokaw, Mr. Pawelski, and Ms. Vigil, have knowingly,

17   voluntarily, and intelligently waived -- intentionally

18   waived their respective rights under the United States

19   Constitution to be present during this trial and have

20   knowingly -- I am sorry strike that.

21          Now, do you wish to remain in the courtroom or do

22   you wish --

23          DEFENDANT BROKAW:  I take exception to your last

24   remark there, Judge.  I have not knowingly waived any of

25   my constitutionally-protected and God-given rights.  I

Attachment

```
1    have not knowingly ever waived any of those.  That is my
2    defense in this whole process.
3         THE COURT:  All right.
4
5
6         DEFENDANT VIGIL:  I take exception also.
7         THE COURT:  You waive your rights under the
8    Constitution to be present in this trial?
9
10
11        DEFENDANT VIGIL:  We have not waived any unlienable
12   rights.
13        THE COURT:  Inalienable?
14
15
16        DEFENDANT VIGIL:  Unlienable.
17        THE COURT:  Do you all wish to remain in the
18   courtroom, or do wish to be held in the holding cell next
19   door?
20        DEFENDANT BROKAW:  I don't consent to either.
21
22
23        DEFENDANT VIGIL:  I don't consent to either one.
24        THE COURT:  Are you going to be respectful and not
25   disruptive of the court proceedings going forward?
```

          1          DEFENDANT BROKAW:  Judge, we came in here honorable
          2     today, and we intend to remain that way.
          3          THE COURT:  All right.  So do you wish to remain in
          4     the courtroom or not?
          5          DEFENDANT BROKAW:  I think we need to discuss that
          6     and take it under advisement.
          7          THE COURT:  All right.  You may.
          8          DEFENDANT BROKAW:  You mean right now?
          9          THE COURT:  Yes, because I have to bring the jury
         10     back in so we can proceed.  So you all may discuss it if
         11     you wish.
         12          DEFENDANT BROKAW:  I don't wish to participate in
         13     the jury instruction.
         14
         15
         16          DEFENDANT VIGIL:  I need to make a phone call.
         17          THE COURT:  We're not making phone calls right now.
         18     We are in the middle of trial.
         19          So, Mr. Brokaw has indicated he doesn't wish to
         20     participate in the jury selection process; is that
         21     correct?
         22          DEFENDANT BROKAW:  That's correct.  I do not
         23     consent.
         24          THE COURT:  Mr. Pawelski, what is your --
         25          DEFENDANT PAWELSKI:  I do not consent to any jury

Attachment

```
 1    trial or process in this building.
 2              THE COURT:  Ms. Vigil?
 3

 4

 5              DEFENDANT VIGIL:  I do not consent to any type of
 6    trial, jury trial or any trial.
 7              THE COURT:  Mr. Brokaw has indicated he does not
 8    want to participate.  Do you want to participate or be in
 9    the cell next door?
10              DEFENDANT BROKAW:  Are you asking me?
11              THE COURT:  You have already responded, Mr. Brokaw.
12    Mr. Pawelski?
13              DEFENDANT PAWELSKI:  What was my choice?
14              THE COURT:  Your choice was do you wish to sit in
15    the courtroom and participate or sit in the courtroom and
16    not participate or go to the holding cell next door?
17              DEFENDANT PAWELSKI:  I do not consent to either
18    one.  I consent that I should leave and go home, me and
19    the defendants.
20              THE COURT:  You are not going to be allowed to go
21    home.  We are -- you have to remain here at the courthouse
22    during your trial.
23              DEFENDANT PAWELSKI:  If I am not participating,
24    what is the difference whether I am here or not?
25              THE COURT:  You need to be here.
```

Attachment

```
 1              DEFENDANT PAWELSKI:  I need to be here.  I see.

 2

 3

 4              DEFENDANT VIGIL:  The defendant needs to be here?

 5    We are not consenting to the surety.

 6              THE COURT:  I understand that is your position,

 7    Ms. Vigil.  The question is, will you be quiet and

 8    respectful as we go through this process?  Because I don't

 9    want to have you removed in front of the jurors because

10    that is not going to help you at all.

11              If you are not going to be quiet and respectful, it

12    is better probably for you not to be in the courtroom,

13    because I don't want to have the jurors seeing you walk

14    out the way they did this morning.  It is not helping your

15    case.  That is what I am trying to decide is whether you

16    should remain here or whether you want to go into the

17    holding cell.

18              (Off-the-record discussion had.)

19              DEFENDANT BROKAW:  Judge, I don't seen how I can

20    participate.  I don't consent to participating in this

21    trial.

22              THE COURT:  I understand you don't want to

23    participate.  I have had other defendants who didn't

24    participate who sat at counsel table quietly and not

25    disruptively.  I have had other defendants who have asked
```

Attachment

1    to be removed and said they did not want to be in the

2    room, they went into the holding cell.  Those are

3    essentially your two choices.

4              DEFENDANT BROKAW:  I don't consent to either, so I

5    don't know what to.

6              THE COURT:  So my question is, are you going to be

7    quiet and respectful or disruptive?

8              DEFENDANT PAWELSKI:  I believe we have been

9    respectful all day.

10             THE COURT:  Except for interrupting the Court while

11   it is trying to do the voir dire.  If you wish to remain,

12   then I ask you to be seated.  We will bring the jury in.

13   We will do the selection process.  You can do your

14   strikes, or you can just ignore the form.

15             DEFENDANT BROKAW:  I don't consent to be present.

16             THE COURT:  All right.  You do not wish to be

17   present?

18             DEFENDANT PAWELSKI:  I can't see any real good

19   reason to be present either.

20             THE COURT:  All right.  Ms. Vigil?

21

22

23             DEFENDANT VIGIL:  I do not consent to be present

24   either, then.

25             THE COURT:  So then we will put you again next door

Attachment

1   in the holding cell.  I am also going, because I have

2   concern now that these defendants, because they don't wish

3   to be here, are a flight risk.  I am going to, at the end

4   of the trial, remand them downstairs to the duty

5   magistrate judge for a detention hearing, because I think

6   their detention hearing has to be reconsidered based on

7   their positions in this court today.

8           So if the marshals would please escort them to the

9   holding cell.  I do want to remind you, if you ever decide

10  you want to come back and participate in this trial,

11  Mr. Brokaw, Mr. Pawelski, Ms. Vigil, all you have to do is

12  let the deputy marshals know that you want to participate

13  and I will allow you to come back into the courtroom.

14          (The defendants are removed from the courtroom.)

15          All right.  Ms. Hartmann, would you please bring

16  back in the jury.

17          MR. KIRSCH:  Your Honor, while she is getting the

18  jury, can I ask, does the Court intend to recess earlier

19  today in order to allow the detention hearing?

20          THE COURT:  We will probably recess about 4

21  o'clock.

22          MR. KIRSCH:  Thank you, Your Honor.

23          (The following is had in open court, in the hearing

24  and presence of the prospective jurors.)

25          THE COURT:  All right.  Welcome back, ladies and

Attachment

1    Q.   Could you please explain where she is?

2    A.   She is at the rear end of that table.

3         MR. KIRSCH:  If the record would reflect he

4    identified Ms. Vigil.

5         THE COURT:  The record will so reflect.

6    Q.   (BY MR. KIRSCH)  Similarly, Special Agent Frankel,

7    the George Thomas Brokaw you described as the subject of

8    your investigation, do you see him in the courtroom?

9    A.   Yes, sir, just to the right of Ms. Vigil.

10        MR. KIRSCH:  If the record would reflect he

11   identified Mr. Brokaw, Your Honor.

12        THE COURT:  The record will so reflect.

13   Q.   (BY MR. KIRSCH)  Special Agent Frankel, the John

14   Joseph Pawelski you described as the subject of your

15   investigation, do you see him in the courtroom?

16   A.   Yes, I do sir.

17   Q.   Where is he?

18   A.   Standing closest to me of the three people.

19        MR. KIRSCH:  If the record would reflect he

20   identified Mr. Pawelski, Your Honor.

21        THE COURT:  The record will so reflect.

22        MR. KIRSCH:  Thank you, Your Honor.  I have no

23   other questions for Special Agent Frankel.

24        THE COURT:  Thank you very much, Special Agent

25   Frankel, you may step down.

Attachment

 1          Ladies and gentlemen of the jury, we are going to

 2    let you go home early today.  I need to take care of one

 3    matter with the parties.  If you can be back at 8 o'clock

 4    tomorrow morning.  If you can bring a lunch so that we can

 5    go through with only a half an hour at noon.  And then we

 6    will hopefully get you out of here by 2:30 or 2:45 at the

 7    latest tomorrow.

 8          Remember, you are not to talk to anyone about this

 9    case, not to conduct any research on your own.  The jury

10    is excused.

11          (The following is had in open court, outside the

12    hearing and presence of the jury.)

13          THE COURT:  You may be seated.

14          All right.  Mr. Brokaw, Mr. Pawelski, and

15    Ms. Vigil, I have been trying to figure out how we should

16    proceed in the face of your refusing to participate in

17    these proceedings.  And I have conducted some research,

18    Rule 43(c)(1) of the Federal Rules of Criminal Procedure

19    allow a defendant who was initially present at trial,

20    which you have been, to waive the right to be present when

21    you voluntarily absent yourself after the trial has begun,

22    which is what you have essentially done, saying I have no

23    jurisdiction.

24          So you can voluntarily waive your right to be

25    present after the trial begins if you chose to do so.  And

Attachment

1    that is the United States Supreme Court case Fairey,

2    F-A-I-R-E-Y, v. Tucker, 132 S. Ct. 2218, a 2012 case.

3    Also Taylor v. United States, 414 U.S. 17, 1973.  And

4    there is a Tenth Circuit case, Brown v. Gibson, Fed. Appx.

5    894, Tenth Circuit, 2001, which held that a defendant's

6    decision to waive his right to be present was permissible

7    and knowingly, intelligently and voluntarily, because the

8    Court did go through and call to the defendants' attention

9    the disadvantages of not being present, which I have done

10   earlier today.

11        Now, I strongly advise you against what you are

12   doing in terms of absenting yourself from these

13   proceedings.  I think it is important and in your best

14   interest to be here.  That being said, the decision

15   ultimately whether you are present or not is yours.  This

16   trial will go on without you.  And so you will still be

17   subject to the verdict.

18        You also remain under the original conditions of

19   the order setting conditions of your release, that is why

20   you are out on bond.  That provides that you have to

21   appear in court as required.

22        I could require you to be here at 8 o'clock

23   tomorrow, and if you didn't come in, I could essentially

24   revoke your release and hold you in custody.  I do not

25   want to do that.  The law I found says that if you choose

Attachment

1  not to be here, that is your choice.  And I am not going

2  to hold you in contempt.  I will not require that you be

3  here.  I will encourage you to be here.

4       But I don't want to have to put you into custody at

5  this point.  I don't want to force you to attend trial if

6  you do not wish to participate.  You have to understand,

7  though, that if you don't participate and you are

8  convicted, you are going to have to surrender as the Court

9  will order you to do.

10       So, I just want to make sure you understand the

11  rights you are giving up.  You have the right to this

12  speedy and public trial.  You have the right to trial and

13  to participate in the trial with this jury.  You have the

14  right to have competent assistance of an attorney, which

15  you have given up months ago.  You have the right to

16  confront and cross-examine the witnesses and the evidence

17  presented against you.  By not participating, you are

18  giving up that right.

19       You have the right to have witnesses subpoenaed and

20  compelled to come into court, which Mr. Pawelski was the

21  only one of you who attempted that, and this morning you

22  withdrew that.  You have the right to testify yourself if

23  you wish to do so, but you also have the right not to

24  testify or make any statement that would incriminate you.

25  And if you are not present, you can't do any of these

Attachment

```
 1    things.

 2         So I just want to make sure that you understand

 3    that these are rights that you will be giving up if you

 4    continue to not participate in this proceeding.  Do you

 5    understand that?

 6         DEFENDANT PAWELSKI:  I do comprehend it.

 7         DEFENDANT BROKAW:  I comprehend everything you are

 8    saying.

 9         THE COURT:  Ms. Vigil?

10         DEFENDANT VIGIL:  I comprehend.

11         THE COURT:  So I am leaving it to you.  I will not

12    order you to be here at 8 o'clock tomorrow.  I will leave

13    that to you.  You are free, hopefully, to change your

14    minds about participating.  And, if you do, then I would

15    expect you -- court will start at 8 o'clock tomorrow

16    morning.  So if you change your minds and you want to

17    participate, then you need to be here promptly at 8

18    o'clock tomorrow morning.

19         If you do not show up at 8 o'clock in the

20    morning -- we were supposed to start today, I told you

21    8:30, and you didn't show up on time and we were delayed

22    by about 15 or 20 minutes.  That will not happen any more.

23    If you don't show up by 8 o'clock tomorrow morning, I am

24    going to then assume that you have decided that you do not

25    want to voluntarily participate in this trial, and we will
```

Attachment

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 13-cr-00392-CMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.  GEORGE THOMAS BROKAW,
2.  JOHN J. PAWELSKI, and
3.  MIMI M. VIGIL,

Defendants.

_____

## REPORTER'S TRANSCRIPT
## (Jury Trial - Day 4)
_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 7:55 a.m. on the 6th
day of November, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

### A P P E A R A N C E S

FOR THE PLAINTIFF:
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

FOR DEFENDANT BROKAW:
Pro Se.
FOR DEFENDANT PAWELSKI:
Pro Se.
FOR DEFENDANT VIGIL:
Pro Se.

Attachment

# I N D E X

**WITNESSES:**                                                           **PAGE**

## LELAND DEERING
DIRECT EXAMINATION BY MR. KIRSCH                            594
CROSS-EXAMINATION BY DEFENDANT BROKAW                       610
CROSS-EXAMINATION BY DEFENDANT VIGIL                        614
REDIRECT EXAMINATION BY MR. KIRSCH                          615


## MICHAEL QUINN
DIRECT EXAMINATION BY MR. KIRSCH                            617
CROSS-EXAMINATION BY DEFENDANT BROKAW                       623


## STACY EBERT
DIRECT EXAMINATION BY MS. PALUCH                            626
CROSS-EXAMINATION BY DEFENDANT BROKAW                       634


## LINDA CHAVEZ
DIRECT EXAMINATION BY MR. KIRSCH                            636


## LYNETTE CORNELIUS
DIRECT EXAMINATION BY MS. PALUCH                            644
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     649
REDIRECT EXAMINATION BY MS. PALUCH                          650


## DULCE MARROQUIN
DIRECT EXAMINATION BY MS. PALUCH                            652
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     660
REDIRECT EXAMINATION BY MS. PALUCH                          661
CROSS-EXAMINATION BY DEFENDANT BROKAW                       662


## ANTHONY DILLMAN
DIRECT EXAMINATION BY MR. KIRSCH                            663
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     670


## TERRY GEARHART
DIRECT EXAMINATION BY MS. PALUCH                            672
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     678
REDIRECT EXAMINATION BY MS. PALUCH                          678


## JOHN MALONEY
DIRECT EXAMINATION BY MR. KIRSCH                            679
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     687
REDIRECT EXAMINATION BY MR. KIRSCH                          688


## PAUL DANLEY
DIRECT EXAMINATION BY MR. KIRSCH                            691
CROSS-EXAMINATION BY DEFENDANT PAWELSKI                     699

Attachment

Case No. 1:13-cr-00392-CMA   Document 485-1   filed 02/26/15   USDC Colorado   pg 26 of 53
Case 1:13-cr-00392-CMA   Document 440   Filed 02/20/15   USDC Colorado   Page 3 of 21

590

**TIMOTHY O'MALLEY**
DIRECT EXAMINATION BY MS. PALUCH                701
CROSS-EXAMINATION BY DEFENDANT BROKAW           708
CROSS-EXAMINATION BY DEFENDANT PAWELSKI         709

**MARIO MORALES**
DIRECT EXAMINATION BY MR. KIRSCH                711
CROSS-EXAMINATION BY DEFENDANT BROKAW           718
REDIRECT EXAMINATION BY MR. KIRSCH              720

**DARCY EMME**
DIRECT EXAMINATION BY MS. PALUCH                748
CROSS-EXAMINATION BY DEFENDANT PAWELSKI         755

**E X H I B I T S**

**NO.**                                         **ADMITTED**

    113    .......................................    632
    114    .......................................    714
    116    .......................................    638
    117    .......................................    655
    118    .......................................    659
    119    .......................................    707
    122    .......................................    752
    123    .......................................    676
    124    .......................................    621
   126,    .......................................    684
   127
    128    .......................................    667
    213    .......................................    601
    270    .......................................    697
    271    .......................................    607


**No.**                                         **REFUSED**

           .......................................

Attachment

1                      **NOVEMBER 6, 2014**

2           (Proceedings commence at 7:55 a.m.)

3           (The following is had in open court, outside the

4    hearing and presence of the jury.)

5           THE COURT:  You may be seated.

6           All right.  We are back in Criminal Case No.

7    13-cr-00392, United States of America v. George Thomas

8    Brokaw, John J. Pawelski, and Mimi M. Vigil.

9           For the record, the Court would note counsel for

10   the Government are present, and all three defendants are

11   present this morning.

12          You have been handed a copy of the proposed jury

13   instructions and the verdict form -- proposed verdict

14   form, which we will discuss and do the charging conference

15   after the Government rests.

16          And I am not sure what the defendants intend to do

17   in terms of putting on a defense, but since they are

18   present, Mr. Pawelski, you are already at the podium, you

19   may proceed to let me know what you intend to do; whether

20   you intend to sit through the remainder of the

21   Government's case or how you intend to proceed.

22          DEFENDANT PAWELSKI:  First of all, my name is

23   private.  For the record, my name is private.  In regards

24   to the all capital letters name on the birth certificate,

25   capital J-O-H-N J P-A-W-E-L-S-K-I, I conditionally accept

Attachment

1    the agent of the general executor, and the Judge is the

2    trustee.  And I do not consent to being the surety.  I

3    accept your oath and bind you to it.  I accept my immunity

4    to 12 U.S.C 95(a)(2) while doing estate business here.

5         Let's move this matter to settlement and closure or

6    a status hearing about who's who.

7         THE COURT:  Denied.

8         DEFENDANT PAWELSKI:  Of course.  Yes, I am going to

9    sit through the prosecutor's questioning.

10        THE COURT:  Okay.  Very well.

11        All right.  Ms. Vigil, you wish to make any

12   statement?

13        DEFENDANT VIGIL:  My name is private.  Spelled in

14   all capital letters as it is on the birth certificate

15   MIMI, all capitals MICHELLE VIGIL, all capitals, and I am

16   here as an agent for the estate as the executor.  And I

17   accept your oath and I bind you to it.  I accept my

18   immunity pursuant to 12 U.S.C. 95(a) while doing estate

19   business here, and I will sit and stay in honor this

20   morning while you go through the process here.

21        THE COURT:  Very good.

22        Mr. Brokaw, do you wish to make any statement?

23        DEFENDANT BROKAW:  Yes, I do, Judge.  My name is

24   private.  And I do not consent to be the surety for the

25   trust.  And I accept your oath.  I bind you to it, also,

Attachment

1    Judge.  And I also accept my immunity pursuant to 12

2    U.S.C. 95(a) while doing estate business here.  And I will

3    participate today.

4         THE COURT:  Very good.  You may be seated.

5         DEFENDANT BROKAW:  I think I will sit down.

6         THE COURT:  All right.  Ms. Hartmann, would you

7    please bring in the jury.

8         COURTROOM DEPUTY:  Your Honor I will need to check.

9         THE COURT:  Check to see if they are all present.

10        (The following is had in open court, in the hearing

11   and presence of the jury.)

12        THE COURT:  Thank you very much.  You may be

13   seated.

14        Welcome back, ladies and gentlemen.

15        The Government may call its next witness.

16        MR. KIRSCH:  Thank you, Your Honor.  The Government

17   calls Leland Deering.

18        COURTROOM DEPUTY:  Please enter and remain

19   standing.

20        Your attention, please.  Please raise your right

21   hand.

22                    **LELAND DEERING**

23   having been first duly sworn, testified as follows:

24        COURTROOM DEPUTY:  Please be seated.

25        Please state your name, and spell your first and

Attachment

1    last names for the record.

2            THE WITNESS:  Leland Deering.  L-E-L-A-N-D

3    D-E-E-R-I-N-G.

4            THE COURT:  You may proceed.

5            MR. KIRSCH:  Thank you, Your Honor.

6                    **DIRECT EXAMINATION**

7    **BY MR. KIRSCH:**

8    Q.    Good morning, Mr. Deering.

9    A.    Good morning.

10   Q.    Are you still employed, sir?

11   A.    I am not.

12   Q.    Did you -- from what job did you retire?

13   A.    I retired from the Internal Revenue Service.

14   Q.    How long were you with the Internal Revenue Service?

15   A.    A little over 36 years.

16   Q.    And what was the last position that you held with the

17   Internal Revenue Service?

18   A.    Last 10 years of my service with the Internal Revenue

19   Service, I was a group manager for the Examination Field

20   Group in Colorado Springs.

21   Q.    And what were your duties as the group manager of

22   that Examination Field Group?

23   A.    Basically, I supervised approximately up to 12 field

24   revenue agents at any given time, maintained contact with

25   these 12 people, provided guidance.

Attachment

1    about this real soon.  Since the Internal Revenue Service

2    and the Federal Reserve were founded in 1913, the value of

3    our dollar has gone down 97 percent, and you are all aware

4    of that.  That is not right.

5         That is our intent from the beginning, to try to

6    fix that problem.  We have done a lot of work studying the

7    financial system in this country.  We have spent months

8    and years studying the laws.

9         THE COURT:  Mr. Brokaw, I will interrupt you

10   because this has nothing to do with the claims that are

11   made against you and your defenses.

12        DEFENDANT BROKAW:  If I am not allowed to say any

13   more --

14        THE COURT:  Not with respect to that.

15        DEFENDANT BROKAW:  Look at all of the evidence

16   before reaching a verdict.

17        THE COURT:  Mr. Pawelski, do you wish to make an

18   argument?  Same limitations apply.

19                     **CLOSING ARGUMENT**

20   **BY DEFENDANT PAWELSKI:**

21        Ladies and gentlemen of the jury, first I presume

22   that some of you already think we are guilty.  The

23   accusations made by the prosecutor of -- the accusations

24   made by the prosecutor, the prosecutor has the burden of

25   proof beyond a reasonable doubt that the alleged crimes

Attachment

1      were done with malice and overtly created.

2              You as a jury can determine both facts and law, no

3      matter what the judge says.  None of the evidence brought

4      forth during this trial were original records, thereby,

5      must be questioned for validity.  None of the witnesses

6      brought forth any first-hand knowledge which could be used

7      to determine a crime.

8              If there was an attempt to thwart legitimate tax

9      collection by issuing the alleged registered private

10     offset bond, why does it state as follows:  "This note

11     shall be posted in full order for dollar pursuant to the

12     credit order noted above to be presented to the payee,

13     United States Department of the Treasury.  After discharge

14     of the debt, the balance of the funds are to be credited

15     to the U.S. Treasury to be used for the benefit of the

16     same."

17             We didn't ask for any money.  We wanted to reduce

18     the national debt.  Mr. Kirsch claims that these bonds

19     were some way of getting around some type of big tax

20     liability.  We brought forth a bonded registered indemnity

21     bond written to "straw man," whoever that would be.  Part

22     of that is a document, it says, "Timothy Geithner,

23     Secretary of Treasury, United States Department of

24     Treasury shall ledger this bond as an asset as it best

25     suits the needs of the United States Department of the

Attachment

1    Treasury, in accordance with the terms and conditions set

2    forth herein for a period of 30 years."

3         That was testified to by Mr. Paul Danley, who is

4    the security agent for the Treasury Inspector General's

5    Office.  So if we are so bad and we wanted to get all of

6    these billions, millions of dollars, which I have no idea

7    where they get all of these numbers, why wouldn't these

8    documents state that?

9         As far as Counts 1 and 14, the prosecutor has not

10   provided any proof that there has been an overt act to

11   perform a crime, thereby, there is no conspiracy.  My

12   friends and I may have been naive to be able to do that,

13   but we surely were not going out there to try to get

14   millions and billions of dollars, as they claim.

15        As far as Count 1, also, the prosecutor has not

16   proven there has been any financial gain.  The testimony

17   today stated there was no financial gain to us.  Both

18   myself and the prosecutor have asked if any money has been

19   transferred, received or sent.  The answer is none.  There

20   was no moneys.  If there is no payment or loans, there is

21   no crime.  That is the Judge's rules.

22        Count 2, there has been no proof provided any

23   alleged acts were made with intent to defraud or file a

24   false claim.  Any claims that were provided were taken off

25   from the IRS.  These are their forms.  We didn't make them

Attachment

Case 1:13-cr-00392-CMA   Document 440   Filed 02/25/15   USDC Colorado   Page 201 of 52

```
 1   up.  They were theirs.
 2        During our many months of studying the financial
 3   tax system, I found no law that filing a government
 4   document will be illegal.  If they are going to make
 5   something illegal, they have to notify the public.
 6   Therefore, I did not knowingly file any false documents.
 7        MR. KIRSCH:  Objection, Your Honor.
 8        THE COURT:  Sustained.
 9        DEFENDANT PAWELSKI:  Prosecutor has not brought
10   forth that any obstruction that occurred by the alleged
11   actions.  Prosecutor has not presented any knowingly and
12   intentional effort to bring about the alleged desired
13   result, therefore, there is no crime.
14        The Constitution, as everyone knows, states that I
15   have a right to face my accuser.  How can I question my
16   accuser when it is a fictitious entity.  Unless my accuser
17   is in the room, is there anyone in this courtroom that has
18   a claim against me?  Mr. Rutkowski, do you have a claim
19   against me, sir?
20        MR. KIRSCH:  Objection to the question, Your Honor.
21        THE COURT:  Mr. Pawelski, that is inappropriate.
22        DEFENDANT PAWELSKI:  Based on the silence, no one
23   has a claim against me or my friends, and you need to
24   acquit.  Ladies and gentlemen, thank you for your time.  I
25   am sorry you had to go through all of that.  All I ask is
```

Attachment

1    that you look at the evidence as presented, use it in a

2    strict, logical manner.  Try to avoid Mr. Kirsch's rants,

3    and let us go home to our family.  Thank you so much.

4          THE COURT:  Ms. Vigil?

5                          **CLOSING ARGUMENT**

6    **BY DEFENDANT VIGIL:**

7          Ladies and gentlemen of the jury, none of you have

8    had a smile.  When you see somebody with no smile, give

9    them yours.  You are all so serious.  So I just think we

10   should lighten up a little here.

11         But I have some questions.  Did we kill anyone?

12   Did we sell drugs?  Did we do human trafficking?  No.  We

13   mailed paperwork.  We found forms that are on irs.gov.

14   Legitimate forms.

15         Did we at the time have knowledge that we were

16   doing something wrong?  We were told by Curtis Morris and

17   a few others that we weren't.

18         MR. KIRSCH:  Objection to the testimony, Your

19   Honor.

20         THE COURT:  All right.  Ms. Vigil.  Ms. Vigil, I

21   told you that you cannot introduce new facts that you did

22   not introduce in your case.

23         DEFENDANT VIGIL:  Okay.  So, as Mr. Brokaw and

24   Mr. Pawelski have said, we did not get a penny out of any

25   of this.  We were doing things to benefit the U.S., is how

Attachment

```
 1    I was looking at it.  So that was the intent.  And the
 2    Government here wants to put us away for the rest of our
 3    lives for doing this, for the rest of our lives.
 4         MR. KIRSCH:  Okay, Your Honor, I have to object at
 5    this point to the reference to punishment.
 6         THE COURT:  Sustained.
 7         DEFENDANT VIGIL:  And do you know that as a jury,
 8    you can say, by the letter of the law the defendant is
 9    guilty, but we also disagree with that law, so we vote not
10    guilty.
11         MR. KIRSCH:  Objection.
12         THE COURT:  The jury will disregard that.  That is
13    not the law.
14         DEFENDANT VIGIL:  So if you haven't looked into
15    jury nullification, you need to.
16         THE COURT:  Ms. Vigil, it is inappropriate to bring
17    up that topic.
18         DEFENDANT VIGIL:  It is something you should have
19    instructed them to do, and you have not.
20         THE COURT:  Ms. Vigil, you had the opportunity to
21    contribute to the jury instructions, and you chose not to
22    give me anything with respect to that issue.
23         DEFENDANT VIGIL:  Well, then that's -- well, the
24    only other thing I want to know is, does anyone in this
25    room have a claim against me?  Silence is acquiescence
```

Attachment

```
 1    that there is no one in this room that has a claim against
 2    me; isn't that correct?
 3            THE COURT:  This is your closing argument.
 4            DEFENDANT VIGIL:  Well, that is correct.  If you
 5    didn't know that, silence is acquiescence.  So everyone
 6    here is being silent when we asked, who has a claim
 7    against us?
 8            So I just ask you to ask yourselves if it is fair,
 9    equitable to be denied the rest of your life for
10    paperwork?  That is all I have to say.  Thanks.
11            THE COURT:  Mr. Kirsch, you may proceed.
12            Your Honor, can I ask for the screen to be changed
13    to the computer in the back, please.
14            THE COURT:  Yes.
15                        CLOSING ARGUMENT
16    BY MR. KIRSCH:
17            You all know, I am sure, that the defendants are
18    not here because they chose to peaceably assemble.  They
19    are not here because they chose to study law.  They are
20    not here because of whatever conclusions they drew based
21    on their study of the law.  They are here because of the
22    evidence that -- because of what they did that has been
23    demonstrated by the evidence that you have heard over the
24    course of this trial.
25            You are here because they prepared original
```

Attachment

 1    documents, like those that you saw, such as Government

 2    Exhibit 203, I believe it is page 74, one of the original

 3    bonds that Ms. Lucas told you and Mr. Lee told you were

 4    mailed to the Department of Treasury.

 5          These say, of course, that they're supposed to be

 6    applied for credit to the account of each of the

 7    individual taxpayers.  But now the defendants want you to

 8    believe that the purpose of all of these documents had

 9    nothing to do with offsetting the tens of thousands or the

10    hundreds of thousands of dollars that they owed for years

11    of taxes, about which they had been notified and liens and

12    levies and everything else.

13          No.  What they want you to believe now is that

14    their purpose in creating fake documents like this was to

15    submit these fake documents to the Secretary of the

16    Treasury, and that somehow that was going to reduce the

17    national debt and benefit the United States.  That is

18    complete hogwash.  It is ridiculous.  It is ridiculous

19    that they would even suggest that you all are so dumb as

20    to believe that.

21          And the idea that where do these numbers come from?

22    Where do these numbers that the Government has been

23    throwing around, where do they come from?  They came from

24    documents like this, the very documents that the

25    defendants prepared.  The very tax liens or levies that

Attachment

1   the defendants sent back to the IRS.  That's where the

2   numbers came from that we have been talking about.  We

3   didn't make them up.  That is either what the defendants

4   owed or it is what they claimed.

5        Obviously the defendants didn't murder anybody;

6   they are not charged with that.  They are not charged with

7   child exploitation or human trafficking or whatever else

8   it is that you heard about.  They are charged with

9   obstructing and impeding the internal revenue laws, and

10  they are charged with making false claims for refunds

11  against the United States.

12       You all know that they did both of those things.

13  You all know that for folks who purport to be concerned

14  with their own privacy, that they weren't concerned about

15  the privacy of Mr. Pryor or Ms. Green or Ms. Wray in their

16  homes.

17       You all know that each of these defendants is

18  guilty of each of the crimes with which they are charged,

19  and I ask you to find them so.  Thank you.

20       THE COURT:  All right.  Ladies and gentlemen, you

21  have heard the evidence, you have been instructed as to

22  the applicable law, and you have heard the argument of the

23  parties.  I remind you that the closing argument by both

24  sides is not evidence in this case, and you should not

25  consider it as evidence in this case.

Attachment

Case No. 1:13-cr-00392-CMA   Document 485-1   filed 05/03/15   USDC Colorado   pg 1 of 53
Case 1:13-cr-00392-CMA   Document 441   Filed 02/25/15   USDC Colorado   Page 1 of 14

800

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Criminal Action No. 13-cr-00392-CMA


**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.  GEORGE THOMAS BROKAW,**
**2.  JOHN J. PAWELSKI, and**
**3.  MIMI M. VIGIL,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT
(Jury Trial - Day 5)**

_____
        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 9:59 a.m. on the 7th
day of November, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

**FOR DEFENDANT BROKAW:**
Pro Se.
**FOR DEFENDANT PAWELSKI:**
Pro Se.
**FOR DEFENDANT VIGIL:**
Pro Se.

Attachment

1       **NOVEMBER 7, 2014**

2           (Proceedings commence at 9:59 a.m.)

3           (The following is had in open court, outside the

4       hearing and presence of the jury.)

5           THE COURT:  You may be seated.

6           All right.  The Court has been informed by a note

7       from the jury that they have reached a verdict.

8           Ms. Hartmann, would you please bring the jury in.

9           Do the defendants not intend to sit at the table?

10          DEFENDANT PAWELSKI:  I would rather sit here.

11          THE COURT:  All right.

12          (The following is had in open court, in the hearing

13      and presence of the jury.)

14          THE COURT:  All right.  You may be seated.

15          I have been informed by a note from the jury that

16      it has reached a verdict in this case.  Would the jury

17      foreperson please stand.

18          All right.  Sir, has the jury reached unanimous

19      verdicts concerning all changes against each of the

20      defendants in this case?

21          JURY FORPERSON:  Yes.

22          THE COURT:  Have you signed the verdict form?

23          JURY FOREPERSON:  Yes.

24          THE COURT:  All right.  Would you please hand the

25      verdict form to one of the Court Security Officers here.

Attachment

1   Thank you.  You may be seated.

2          All right.  I will now read the verdict.

3          Verdict Form Count 1:  We the jury unanimously find

4   the defendant, George Thomas Brokaw, guilty of the charge

5   in Count 1 of the First Superseding Indictment.

6          We the jury unanimously find the defendant, John J.

7   Pawelski, guilty of the charge in Count 1 of the First

8   Superseding Indictment.

9          We the jury unanimously find the defendant, Mimi M.

10  Vigil, guilty of the charge to Count 1 of the First

11  Superseding Indictment.

12         Count 2:  We the jury unanimously find the

13  defendant, George Thomas Brokaw, guilty of the charge in

14  Count 2 of the First Superseding Indictment.

15         Count 3:  We the jury unanimously find the

16  defendant, George Thomas Brokaw, guilty of the charge in

17  Count 3 of the First Superseding Indictment.

18         Count 4:  We the jury unanimously find the

19  defendant, George Thomas Brokaw, guilty of the charge in

20  Count 4 of the First Superseding Indictment.

21         Count 5:  We the jury unanimously find the

22  defendant, George Thomas Brokaw, guilty of the charge in

23  Count 5 of the First Superseding Indictment.

24         Count 6:  We are jury unanimous find defendant,

25  George Thomas Brokaw, guilty of the charge in Count 6 of

Attachment

1    the First Superseding Indictment.

2        Count 7:  We the jury unanimous find the defendant,

3    George Thomas Brokaw, guilty of the charge in Count 7 of

4    the First Superseding Indictment.

5        Count 8:  We the jury unanimously find the

6    defendant, John J. Pawelski, guilty of the charge in Count

7    8 of the First Superseding Indictment.

8        Count 9:  We the jury unanimously find the

9    defendant, John J. Pawelski, guilty of the charge in Count

10    9 of the First Superseding Indictment.

11        Count 10:  We the jury unanimously find the

12    defendant, John J. Pawelski, guilty of the charge in Count

13    10 of the First Superseding Indictment.

14        Count 11:  We the jury unanimously find the

15    defendant, John J. Pawelski, guilty of the charge in Count

16    11 of the First Superseding Indictment.

17        Count 12:  We the jury unanimously find the

18    defendant, Mimi M. Vigil, guilty of the charge in Count 12

19    of the First Superseding Indictment.

20        Count 14:  We the jury unanimously find the

21    defendant, George Thomas Brokaw, guilty of the charge in

22    Count 14 of the First Superseding Indictment.

23        We the jury unanimously find the defendant, John J.

24    Pawelski, guilty of the charge in Count 14 of the First

25    Superseding Indictment.

Attachment

Case No. 1:13-cr-00392-CMA   Document 485-1   filed 06/03/15   USDC Colorado   pg 44 of 53
Case 1:13-cr-00392-CMA   Document 441   Filed 02/25/15   USDC Colorado   Page 44 of 14

804

1    We the jury unanimously find the defendant, Mimi M.

2  Vigil, guilty of the charge in Count 14 of the First

3  Superseding Indictment.

4    Count 15:  We the jury unanimously find the

5  defendant, George Thomas Brokaw, guilty of the charge in

6  Count 15 of the First Superseding Indictment.

7    Count 16:  We the jury unanimously find the

8  defendant, John J. Pawelski, guilty of the count charged

9  in Count 16 of the First Superseding Indictment.

10    Count 17:  We the jury unanimously find the

11  defendant, Mimi M. Vigil, guilty of the charge in Count 17

12  of the First Superseding Indictment.

13    Do the defendants or the Government wish the Court

14  to poll the jurors individually to verify and confirm the

15  validity and unanimity of the verdict?

16    MR. KIRSCH:  We would ask for the Court to do that,

17  please, Your Honor.

18    THE COURT:  All right.  I will just call you by the

19  number and then seat name.

20    Juror No. 463, Seat No. 1, is this your verdict?

21    JUROR:  Yes, it is.

22    THE COURT:  Juror 488, in Seat No. 2, is this your

23  verdict?

24    JUROR:  Yes, it is.

25    THE COURT:  Juror 895, in Seat No. 3, is this your

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*

Attachment

1    verdict?

2          JUROR:  Yes.

3          THE COURT:  Juror 124, in Seat No. 4, is this your

4    verdict?

5          JUROR:  Yes, it is.

6          THE COURT:  Juror No. 433, in Seat No. 6, is this

7    your verdict?

8          JUROR:  Yes, it is.

9          THE COURT:  Juror No. 432, in Seat No. 7, is this

10   your verdict?

11         JUROR:  Yes, it is.

12         THE COURT:  Juror 882, in Seat No. 9, is this your

13   verdict?

14         JUROR:  Yes, it is.

15         THE COURT:  Juror No. 889, in Seat No. 10, is this

16   your verdict?

17         JUROR:  Yes, it is.

18         THE COURT:  Juror No. 367, in Seat 11, is this your

19   verdict?

20         JUROR:  Yes, it is.

21         THE COURT:  Juror No. 152, in Seat No. 12, is this

22   your verdict?

23         JUROR:  Yes.

24         THE COURT:  Juror No. 107, in Seat No. 13, is this

25   your verdict?

Attachment

Case 1:13-cr-00392-CMA   Document 441   Filed 02/25/15   USDC Colorado   Page 7 of 14

806

```
 1          JUROR:  Yes.

 2          THE COURT:  Juror No. 418, in Seat No. 14, is this

 3    your verdict?

 4          JUROR:  Yes, it is.

 5          THE COURT:  All right.  Thank you very much, ladies

 6    and gentlemen.  You have now concluded your duties as

 7    jurors in this case, and it is with the thanks of the

 8    Court and of the parties.  The question usually arises now

 9    whether you can talk about this case, and the answer is

10    you can talk to anybody you wish to about this case now,

11    but you don't have to talk to anybody about this case.

12          The parties or representatives of the parties are

13    not allowed to contact you.  So if you get a contact from

14    them and you do not wish to speak with them, you just need

15    to tell them that if they continue to bother you, then you

16    need to let the Court know, and I will take care of that.

17          If you wish to talk to them, that is totally within

18    your decision.  If they contact you, that would be in

19    violation of my order because they can't contact you.

20          If anybody does persist in attempting to talking to

21    you about this case over your objection, then just let me

22    know and I will handle that, as well.

23          I thank you very much for your service.  And I do

24    need to take care of some preliminary matters with the

25    parties, but I do like to thank you personally.  So if you
```

Attachment

Case 1:13-cr-00392-CMA   Document 441   Filed 02/25/15   USDC Colorado   Page 48 of 14

807

```
1    are not in a rush, I would ask if you could wait about 5
2    minutes, and I will be back to thank you personally, and
3    also that is the opportunity -- we made you sit here and
4    not ask any questions.  If you have any questions of me
5    that I can answer -- some questions I will not be able
6    to -- I will be more than glad to take your questions at
7    that time.
8              So thank you very much, ladies and gentlemen.  The
9    jury is excused.
10             (The following is had in open court, outside the
11   hearing and presence of the jury.)
12             THE COURT:  All right.  At this time the defendants
13   are referred to the probation department for a presentence
14   investigation report.
15             Will the probation officer who is present please
16   identify himself for the record.
17             PROBATION OFFICER:  Darren Streich.  Good morning,
18   Your Honor.
19             THE COURT:  Good morning.  Officer Streich, will
20   you be the officer conducting this investigation?
21             PROBATION OFFICER:  It is uncertain at this point.
22   They have not been assigned, Your Honor.
23             THE COURT:  So we will then put it into your hands,
24   and I will allow the probation officer to determine who
25   will conduct this investigation.
```

Attachment

1    They are to conduct a presentence investigation and

2    submit a presentence report as required by Federal Rule of

3    Criminal Procedure 32.

4        Ms. Hartmann, do we have some dates for sentencing?

5        COURTROOM DEPUTY:  How long will we need for

6    sentencing, Your Honor?

7        THE COURT:  I think probably the usual 12 weeks

8    would be sufficient; is that correct, Officer Streich, or

9    with three defendants do we need more time?

10       PROBATION OFFICER:  12 weeks.

11       THE COURT:  So 12 weeks is what we are normally

12   setting at.

13       COURTROOM DEPUTY:  Then looking at the end January,

14   Your Honor.  We have an opening in the afternoon on

15   January 25th at 3:30.

16       THE COURT:  All right.  So sentencing in this

17   matter will be set for January 25th at 3:30 p.m.

18       MR. KIRSCH:  Can I ask which day that is, Your

19   Honor?

20       COURTROOM DEPUTY:  It is a Wednesday.

21       MR. KIRSCH:  Thank you, Your Honor.  That would be

22   fine.

23       THE COURT:  All right.  The defendants are ordered

24   to appear on that date and time with without further order

25   or notice of this Court.

Attachment

1        If there are any sentencing positions, including

2    motions for variant sentence, those must be filed at least

3    14 days before the sentencing date.  Any responses or

4    objections to those must be filed at least 7 days before

5    that sentencing date.  Any post-trial motions are to be

6    submitted in accordance with the Federal Rules of Criminal

7    Procedure.

8        And, Mr. Kirsch, what is the Government's position

9    with respect to whether the defendants should be allowed

10    to remain free pending trial on their bonds or remanded?

11    MR. KIRSCH:  Your Honor, we are requesting remand

12    based on the presumption in Section 3143(a), based on the

13    defendants' demonstrated lack of acknowledgment of the

14    Court's authority and the Court's jurisdiction over the

15    course of the proceedings, and also based upon the fact

16    that when one of the prior associates of at least two of

17    the defendants; Mr. Brokaw and Mr. Pawelski, the person I

18    am referring to is Ronald Hoodenpyle, Mr. Hoodenpyle was

19    ordered to surrender for service of sentence in his

20    original case, he did not do that, and had, instead,

21    absconded.

22        At the time he was arrested, he was arrested at a

23    cabin near Grand Lake, Colorado, and Mr. Brokaw and

24    Mr. Pawelski were both present with Mr. Hoodenpyle at that

25    time while he was a fugitive.  Mr. Hoodenpyle, the Court

Attachment

1    may notice, was also listed as a witness or surety on some

2    of the documents which we introduced during this trial.

3           Based on all of those factors, we are asking for

4    remand of all three defendants.

5           THE COURT:  All right.  Mr. Pawelski?

6           DEFENDANT PAWELSKI:  Ma'am, I take exception to

7    that.  Mr. Hoodenpyle was at that cabin, and he had told

8    us he was bonded out.  We did not know that he was a

9    fugitive, otherwise we would have called the authorities.

10          I am not planning on going anywhere.  Mr. Brokaw,

11    Ms. Vigil are not planning to go anywhere.  We have roots

12    in this community.  We have been here a long time.  I have

13    a lovely, lovely woman I am planning on marrying, and I

14    believe that the future with the appeals court, that I

15    have already put the writ of mandamus in which you have,

16    and the upcoming Supreme Court suit will resolve this

17    issue.

18          I would be -- I would be unable to provide you with

19    that information should I be in some type of custody.  I

20    will guarantee you that I will not leave.  I have not done

21    anything within this court procedure that you and I have

22    not agreed to.  And I will continue holding that word to

23    myself and you.

24          THE COURT:  All right.

25          DEFENDANT PAWELSKI:  Thank you.

Attachment

1          THE COURT:  Mr. Brokaw?

2          DEFENDANT BROKAW:  Yes, our appearance at all of

3     the required times here, this procedure has been going on

4     for over a year now.  We have not attempted to violate any

5     rules of probation or anything up to this point, and there

6     is no way I am going to try to abscond anywhere.  I have

7     roots in the community.  I volunteer.  I have church

8     connections.  I have family.  And there is absolutely no

9     flight risk.  There is no reason to think we won't be here

10    at any appointed time.

11         THE COURT:  All right.  Ms. Vigil, do you wish to

12    make any statement?

13         DEFENDANT VIGIL:  Yes.  At this point and in the

14    past I have not done anything with probation.  I have

15    followed everything that has been asked of me.  I have

16    been here.  I have no reason to leave the state, the city,

17    or the country or anything.  I will be here on the 25th.

18         THE COURT:  All right.  Well, Title 18 United

19    States Code Section 3143 does provide that the Court shall

20    order that a person who has been found guilty of an

21    offense and who was awaiting imposition of a sentence be

22    detained unless the Court finds by clear and convincing

23    evidence that the person is not likely to flee or pose a

24    danger to the safety of any other person or the community

25    if released under 3142(b-c).

Attachment

1          I am not concerned about any danger to the safety

2     of any person, but I do have some concerns about the

3     likelihood that they would flee or not appear in court,

4     considering that they have refused to recognize the

5     jurisdiction of this Court, and the fact that they may be

6     facing -- most likely will be facing a sentence of

7     imprisonment.

8          The bond conditions as they now stand, the Court

9     does not believe reasonably assures that they will not

10    flee.  I believe that a new detention hearing by the duty

11    magistrate judge, who is Magistrate Tafoya, should be

12    conducted in order to comply with 18 United States Code

13    Section 3142.  And, in this regard, I earlier informed

14    Magistrate Judge Tafoya that depending upon the jury's

15    verdict, if there was a verdict of guilt, that she needed

16    to be prepared to conduct a detention hearing for all

17    three defendants.

18          So she is awaiting them to come down.  The Court

19    does remand the defendants to the custody of the U.S.

20    Marshals and request that the Marshals deliver the

21    defendants to Magistrate Judge Tafoya's courtroom for

22    those detention hearings.

23          Anything further?

24          MR. KIRSCH:  Your Honor.  Can we just confirm the

25    date.  We heard the 25th of January.

Attachment

1      COURTROOM DEPUTY:  It is the 28th of January at

2    3:30.

3      THE COURT:  The 28th.

4      COURTROOM DEPUTY:  So the 28th that the defendants

5    are to appear.  So at this point I will remand the

6    defendants to the custody of the U.S. Marshal to be taken

7    down to the magistrate.

8      Court will be in recess.

9      (Proceedings conclude at 10:15 a.m.)

10

11      **R E P O R T E R ' S   C E R T I F I C A T E**

12

13      I, Darlene M. Martinez, Official Certified

14    Shorthand Reporter for the United States District Court,

15    District of Colorado, do hereby certify that the foregoing

16    is a true and accurate transcript of the proceedings had

17    as taken stenographically by me at the time and place

18    aforementioned.

19

20      Dated this 7th day of February, 2015.

21

22      _____

23      s/Darlene M. Martinez

24      RMR, CRR

25

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*

Attachment