**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

**June 2, 2016**

## TENNTH CIRCUIT

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA

      Plaintiff - Appellee,

v.

JOHN J. PAWELSKI,

      Defendant - Appellant.

---------------------------------

UNITED STATES OF AMERICA

      Plaintiff - Appellee,

v.

GEORGE THOMAS BROKAW,

      Defendant - Appellant.

---------------------------------

UNITED STATES OF AMERICA

      Plaintiff - Appellee,

v.

MIMI M. VIGIL,

      Defendant - Appellant.

No. 15-1056
(D. Colo.)
(D. Ct. No. 1:13-CR-00392-CMA-2)

No. 15-1057
(D. Colo.)
(D. Ct. No. 1:13-CR-00392-CMA-1)

No. 15-1058
(D. Colo.)
(D. Ct. No. 1:13-CR-00392-CMA-3)

---

# ORDER AND JUDGMENT[*]

---

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.

---

Appellants George Thomas Brokaw, John J. Pawelski, and Mimi M. Vigil were convicted of filing false claims for tax refunds, corruptly endeavoring to obstruct or impede administration of internal revenue laws, and conspiracy.[1] They dismissed their court-appointed attorneys and represented themselves at trial and sentencing. They did not attend most of their trial and did not present a defense. They argue on appeal that the district court erred throughout trial and sentencing. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.  BACKGROUND

We provide only a brief summary of the district court proceedings to give the reader the benefit of context. Throughout the opinion, we will provide additional background information pertaining to each issue.

### A.  *Procedural Chronology*

September 23, 2013:  Indictment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We refer to Mr. Brokaw, Mr. Pawelski, and Ms. Vigil interchangeably as the Defendants and the Appellants.

February 18, 2014:  Mr. Pawelski moved to dismiss his appointed counsel.

February 26, 2014:  District court conducted a *Faretta* hearing on the motion, granted the motion, and denied Mr. Pawelski's request for advisory counsel.

April 1, 2014:  Ms. Vigil moved for severance.

June 12, 2014:  Motion to sever denied.

July 17, 2014:  Ms. Vigil moved to dismiss her appointed counsel.

August 15, 2014:  District court conducted a *Faretta* hearing on the motion, granted the motion, and did not appoint advisory counsel.

October 3, 2014:  District court granted Mr. Pawelski's renewed request for advisory counsel.

October 9, 2014:  District court granted in part, denied in part, and referred to the Government in part Mr. Pawelski's request for issuance of subpoenas.

October 23, 2014:  Mr. Pawelski moved to terminate advisory counsel and to withdraw his request to issue subpoenas; district court granted both motions on the first day of trial.

November 3, 2014:  First day of trial, which consisted of jury selection.

November 7, 2014:  Last day of trial.  Defendants were convicted on all counts:

   (1) filing false claims for tax refunds in violation of 18 U.S.C. § 287;

   (2) conspiracy to file false claims for tax refunds in violation of 18 U.S.C. § 286;

   (3) corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a);

   (4) conspiracy to corruptly endeavor to obstruct or impede the administration of the internal revenue laws in violation of 18 U.S.C. § 371.

February 10, 2015:  Sentencing hearings and imposition of sentences.

February 18, 2015:  Notices of appeal filed.

March 4, 2015:  Amended notices of appeal filed.

## B. *Factual Background*

Appellants and codefendants are members of a group called the Republic of Colorado.  They contend the United States and Colorado governments have no jurisdiction over them.  As part of their tax-protesting activities, Mr. Brokaw and Mr. Pawelski presented seminars and distributed materials to individuals seeking to avoid their tax obligations.  Although Ms. Vigil did not disseminate information or hold seminars like her codefendants did, the district court concluded during sentencing that she was heavily involved in the conspiracy for over four years.

The trial evidence showed that:

1.  Appellants repeatedly filed IRS Forms 1099-OID with their Form 1040 tax returns that "falsely reported that financial institutions, lenders, law firms, government agencies, or other entities had withheld and paid over to the IRS interest income from accounts in their names, including mortgages, credit card accounts, and checking accounts."  Brokaw ROA, Vol. I at 153.  Mr. Brokaw filed six false claims seeking $358,218; Mr. Pawelski filed four false claims seeking $22,961,548; and Ms. Vigil filed one false claim seeking $372,169.

2.  Appellants tried to eliminate their tax debts by submitting electronic fund transfer instruments to the IRS.  Bank representatives explained at trial that the transfers were really checks drawn on closed bank accounts.  Ms. Vigil stated the following in one email describing the attempted scheme:  "That means you write checks on the account, and the bank has to honor them or 'pay' whoever you write the checks to, but you don't have to deposit any funds in the account!!  What a deal . . . ."  Brokaw ROA, Vol. 1 at 155.

3.  Appellants harassed IRS and Department of Treasury employees who investigated and attempted to collect taxes from them by mailing them

-4-

fraudulent liens claiming the employees owed them amounts of money ranging from tens of millions to billions of dollars. They mailed one fraudulent lien to an employee's home and attempted to obtain the home address of another employee.

## C. *Proceedings Related to Appellants' Issues on Appeal*

Appellants' claims of error stem from the following district court proceedings:

1. <u>Motion to sever</u>: Ms. Vigil moved to sever her trial from the others' trial. The district court denied the motion.

2. <u>Pro se representation</u>: Each Defendant asked to dismiss appointed counsel and proceed pro se. Mr. Pawelski requested appointment and, one week later, dismissal of advisory counsel, both of which the court granted. Ms. Vigil's dismissed counsel suggested that the district court appoint advisory counsel, but Ms. Vigil made no such request and said she did not want an attorney. The district court did not appoint advisory counsel for Ms. Vigil.

3. <u>Request to issue subpoenas</u>: Mr. Pawelski requested the court's assistance in the issuance of witness subpoenas, which the court granted in part and denied in part. Before trial, Mr. Pawelski withdrew his subpoena requests.

4. <u>Voir dire</u>: The Defendants disrupted jury selection and left the courtroom. This prompted questions from a prospective juror and answers from the court about the Defendants' conduct and how jurors should react to it.

5. <u>Trial attendance</u>: After the jury had been empaneled on the first day of trial, the district court advised the Defendants that they could waive their right to attend trial under Federal Rule of Criminal Procedure 43(c).

6. <u>Final jury instructions</u>: The final jury instructions omitted reference to Clara Mueller, who was originally charged in the indictment but was dismissed for medical reasons.

7. <u>Sentencing</u>: The court varied downward in sentencing each defendant. Ms. Vigil and Mr. Pawelski challenge the substantive and procedural reasonableness of their sentences. The district court varied downward from a base level of 30 to 26 and imposed a 72-month sentence on Ms. Vigil. The court varied downward from a base level offense of 28 to 24 and imposed a 78-month sentence on Mr. Pawelski.

## II. **DISCUSSION**

Appellants filed separate notices of appeal and separate briefs. Collectively, they raise 16 issues. Each Appellant has incorporated by reference arguments appearing in specific portions of one or both of the others' briefs. We granted Ms. Vigil's and Mr. Brokaw's motions to do so, and although Mr. Pawelski did not ask permission to incorporate the others' arguments in his brief, he did so anyway in his opening brief, and we will consider those arguments as to him as well.

Due to common appeal issues and the cross-referencing of arguments, we address Appellants' appeals in one opinion. As to each of the 16 issues, one, two, or all three of the Appellants have raised the issue. Accordingly, as we address each issue, we will note which of the Appellants has raised it.

### A. **ISSUE # 1:** *Motion to Sever (Ms. Vigil)*

Before trial, Ms. Vigil moved to sever her trial from that of her codefendants. The district court denied the motion, concluding any disparity in the weight of evidence did not justify severance and that the jury could fairly consider the codefendants' defenses. Ms. Vigil argues the district court erred by denying her motion.

### 1. **Additional Background**

On April 1, 2014, Ms. Vigil moved to sever her trial from that of her codefendants. She sought a separate trial based on "(1) . . . the likelihood she would suffer prejudice, impacting her right to a fair trial; (2) the defenses of Vigil and her co-defendants Brokaw and Pawelski were mutually antagonistic, as Vigil planned to raise a

good faith defense; and (3) co-defendants Brokaw and Pawelski were substantially more involved in the wrongdoing."  Vigil Aplt. Br. at 6; *see also* Vigil ROA, Vol. I at 118-20.

On June 12, 2014, the district court denied the motion because (1) "the competing defenses [were not] so antagonistic as to be mutually exclusive," Vigil ROA, Vol. I at 232, and (2) "[t]he Tenth Circuit has repeatedly rejected the argument that a severance is proper based on a potential disparity in the amount of evidence against different defendants," *id.* at 233 (citing *United States v. Emmons*, 24 F.3d 1210, 1218-19 (10th Cir. 1994).

## 2.  **Standard of Review**

"The decision whether to grant a severance is within the sound discretion of the trial court.  We will not disturb the trial court's decision absent an affirmative showing of abuse of discretion and a strong showing of prejudice."  *United States v. Evans*, 970 F.2d 663, 675 (10th Cir. 1992) (citations and quotations omitted).  "To establish abuse of discretion more is required than that separate trials might have offered a better chance for acquittal of one or more of the accused."  *Id.* (quotations omitted)

## 3.  **Legal Standard**

"[I]n a conspiracy trial it is preferred that persons charged together be tried together."  *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir. 1994).  Nonetheless, the district court may order a severance when joinder will prejudice a defendant.  Fed. R. Crim. P. 14(a).  A district court should grant severance when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the

-7-

jury from making a reliable judgment about guilt or innocence." *United States v. Morgan*, 748 F.3d 1024, 1043 (10th Cir. 2014) (quotation omitted).  "[T]rial courts have a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 2014) (quotation omitted).

4.  **Analysis**

Ms. Vigil asserts Mr. Brokaw and Mr. Pawelski "led and organized tax protesters, targeted susceptible individuals like Vigil, and duped them into believing they were participating in a legitimate tax protest."  Vigil Aplt. Br. at 46-47.  She states she planned to make a good-faith defense at trial and that she suffered prejudice because (1) the jury associated her with her codefendants, who made "incompetent and irrelevant arguments," and (2) her codefendants pressured her to abandon her good-faith defense.  *Id.* at 49.

Ms. Vigil has not made a "strong showing of prejudice."  *Evans*, 970 F.2d at 675.  Although her counsel stated his intent to bring a good-faith defense, Ms. Vigil proceeded pro se and presented no defense at trial, much less a good-faith defense.  She voluntarily absented herself until the last day of trial, when she delivered a closing argument focused on jury nullification.  In addition, she points to no record evidence that her codefendants urged her to abandon her good-faith defense.

Ms. Vigil has not shown prejudice.  The district court did not abuse its discretion in denying the motion to sever.

B.  **ISSUES # 2 and 3:** *Mr. Pawelski's Self-Representation*

Mr. Pawelski argues the district court erred by concluding he waived his right to

-8-

counsel and by failing to appoint advisory counsel.

1. **ISSUE # 2:  Waiver of the Right to Counsel (Mr. Pawelski)**

Mr. Pawelski moved to dismiss his counsel and represent himself.  The district court conducted a *Faretta* hearing and concluded Mr. Pawelski was competent to waive his right to counsel.  Mr. Pawelski now argues he was not competent to do so.

a.  *Additional background*

On February 18, 2014, Mr. Pawelski moved to dismiss his attorney and to represent himself.  The district court held a hearing to evaluate whether Mr. Pawelski was competent to waive his right to counsel under *Faretta v. California*, 422 U.S. 806 (1975). At the *Faretta* hearing, the court asked Mr. Pawelski questions and learned that he:

- Was 65 years old.

- Has an associate's degree in computer science and a bachelor's degree in business.

- Was not receiving medical treatment for any physical or mental condition.

- Was taking only aspirin for medication.

- Did not have a physical disability that would hinder his ability to represent himself.

- Was not under the influence of alcohol or drugs.

- Had never represented himself in a legal proceeding.

- Understood the charges against him and the potential penalties.

- Understood that representing himself put him at a "substantial professional disadvantage."

- Understood he was not going to receive "special treatment" from the court or the Government on account of his pro se status.

- ▪ Understood he would not be entitled to delay the trial on account of his pro se status.

- ▪ Understood he was required to abide by procedural rules, act professionally in court, and take an oath before testifying.

- ▪ Understood he could not appeal a conviction based on his lack of knowledge or skill.

- ▪ Did not have any questions for the court and affirmed that he wanted his attorney to withdraw so that he could proceed pro se.

Pawelski ROA, Vol. VI at 66-89.

The court concluded Mr. Pawelski knowingly, voluntarily, and intentionally waived his right to counsel.

b.   *Standard of review*

"We review the validity of a waiver to the right to counsel de novo."   *United States v. Vann*, 776 F.3d 746, 762 (10th Cir. 2015).

c.   *Legal standard*

A defendant has the right to represent himself and can do so by waiving his Sixth Amendment right to counsel.   *Faretta*, 422 U.S. at 819.  An invocation of the right to self-representation must satisfy four requirements:

> First, the defendant must clearly and unequivocally inform the district court of his intention to represent himself.  Second, the request must be timely and not for the purpose of delay. Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is knowingly and intelligently made.  Finally, the defendant must be able and willing to abide by rules of procedure and courtroom protocol.

*United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (quotations and citations

omitted).

Mr. Pawelski focuses on the third requirement.  He contends the district court erred in concluding he voluntarily, knowingly, and intelligently waived his right to counsel.  "In the normal course, we examine whether a defendant has effectively waived his right to counsel under a two-part test.  First, we must determine whether the defendant voluntarily waived his right to counsel and second, we must determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently."  *Vann*, 776 F.3d at 763 (quotations and brackets omitted).

District courts usually determine whether a defendant has voluntarily, knowingly, and intelligently waived his right to counsel by "conduct[ing] a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se."  *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991).

That "formal inquiry," known as a *Faretta* hearing, is "probably the best way" to determine whether there has been a valid waiver.  *Vann*, 776 F.3d at 763.  A *Faretta* hearing, however, "is only a means to an end of ensuring a voluntary and intelligent waiver, and the absence of that means is not error as a matter of law."  *Id.* (quotations and brackets omitted); *see also See United States v. Behrens*, 551 F. App'x 452, 457 (10th Cir. 2014) (unpublished) (stating "no precise litany of questions must be asked of a

-11-

defendant seeking to waive the right to counsel").[2]   "[T]he true test for an intelligent waiver turns not only on the state of the record, but on all the circumstances of the case, including the defendant's age and education, his previous experience with criminal trials, and representation by counsel before trial."   *Vann*, 776 F.3d at 763 (quotation omitted).

    d.  *Analysis*

    The district court did not err when it concluded Mr. Pawelski waived his right to counsel.  Mr. Pawelski urged his counsel to file a motion to withdraw.  In that motion, his counsel stated, "At a conference in Colorado Springs this date, Mr. Pawelski confirmed to counsel and counsel's investigator that it is definitely his desire to represent himself." Pawelski ROA, Vol. I at 106.  At the *Faretta* hearing, the district court thoroughly explained the disadvantages of proceeding without counsel.  It confirmed that Mr. Pawelski was aware of the nature of the charges and the potential penalties, the disadvantages of pro se representation, and the requirement that he follow procedural and professional rules and standards.  Mr. Pawelski repeatedly affirmed that he wished to proceed without an attorney.

    Mr. Pawelski has a college education and was not receiving medical treatment or taking medication for mental health issues.  Although Mr. Pawelski behaved erratically at some points of the proceedings, nothing in the record indicates his behavior was

---

[2] We find the reasoning of this and the other unpublished opinions cited in this opinion, though not precedential, to be instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

influenced by anything other than his beliefs as a tax protestor and member of the Republic of Colorado.

Mr. Pawelski asserts the district court erred by failing to explain potential defenses. Although we have expressed concern when courts do not discuss potential defenses, *see, e.g.*, *United States v. Padilla*, 819 F.2d 952, 957 (10th Cir. 1987), there is no set script for *Faretta* hearings. *Behrens*, 551 F. App'x at 457. Indeed, we have concluded the complete absence of a *Faretta* hearing is "not error as a matter of law." *Vann*, 776 F.3d at 763 (quotation omitted). And, in *Williamson*, we found "no merit in [the defendant's] contention that a valid waiver of counsel requires an explanation of the law of aiding and abetting, or an explanation of the possible defenses to the charge." 806 F.2d at 220.

We therefore conclude the district court did not err in determining Mr. Pawelski knowingly, voluntarily, and intentionally waived his right to counsel.

## 2. **ISSUE # 3: Advisory Counsel (Mr. Pawelski)**

The court appointed Mr. Pawelski's former counsel as advisory counsel but not immediately after Mr. Pawelski asked the court to do so. Mr. Pawelski contends the district court erred by not appointing advisory counsel when Mr. Pawelski initially requested it.

### a. *Additional background*

At his *Faretta* hearing, Mr. Pawelski requested that his attorney serve only as advisory counsel. The court denied the motion without prejudice and directed Mr.

-13-

Pawelski to file a renewed motion explaining the basis for the request.  The court also

allowed Mr. Pawelski's attorney to withdraw.

Mr. Pawelski filed a renewed motion, and the court appointed Mr. Pawelski's

withdrawn attorney as advisory counsel on October 3, 2014.  The court explained that his

advisory counsel was not allowed to ghost write motions and could only answer Mr.

Pawelski's questions and "point [him] in the right direction."  Pawelski ROA, Vol. V at

83.

On October 23, 2014, Mr. Pawelski moved to terminate his advisory counsel.  The

court granted the motion on the first day of trial:

> THE COURT: . . . Mr. Pawelski, I have gone over several times with you
> the dangers and disadvantages of representing yourself. You clearly
> indicated that first you didn't want counsel, then last time you were here
> you wanted Mr. Stuckey appointed only to provide you guidance with
> respect to subpoenas and other matters preparing for court.  At this point I
> assume you are asking for me to excuse him or terminate him even as
> advisory counsel; is that correct[?]
>
> DEFENDANT PAWELSKI: Correct.
>
> THE COURT: That motion is granted. Mr. Stuckey is released from his
> services to represent. I will not go through another *Faretta* colloquy
> because I have done that several times.

 Pawelski ROA, Vol. V at 174.  Mr. Pawelski remained pro se during the trial and

sentencing phases.

b.  *Standard of review*

We review this issue for abuse of discretion.  "We believe that the appointment of

[advisory] counsel is discretionary with the trial court and that, in the final analysis, abuse

-14-

of that discretion is to be determined by whether the defendant received a fair trial."
*United States v. DePugh*, 452 F.2d 915, 920 (10th Cir. 1971).

c. *Legal standard*

"[O]nce a defendant has declared his desire to proceed pro se, appointment of
standby [or advisory] counsel is a preferred, though not mandatory, practice." *Padilla*,
819 F.2d at 959.[3]

d. *Analysis*

Mr. Pawelski argues the district court erred when it declined to appoint advisory
counsel upon his first request at the February 26, 2014 hearing. This argument is
meritless. <u>First</u>, the district court was not required to appoint advisory counsel. *Padilla*,
819 F.2d at 959. <u>Second</u>, the district court *did* appoint advisory counsel, whom Mr.
Pawelski subsequently moved to dismiss three weeks later. The court did not abuse its
discretion when it did not appoint advisory counsel immediately upon request.

C. **ISSUE # 4:** *Request for Subpoenas (Mr. Pawelski)*

---

[3] Like the parties, our case law uses the terms "standby counsel" and "advisory counsel" interchangeably. *See, e.g*, *United States v. Taylor*, 183 F.3d 1199, 1204 n.3 (10th Cir. 1999) (using the terms interchangeably in the opinion's text and footnotes); *Padilla*, 819 F.2d at 959 ("While we hold that appointment of standby counsel is preferred, we emphasize that the presence of advisory counsel in the courtroom or the defendant's acquiescence in counsel's participation does not, by itself, relieve the district court of its responsibility to ensure that defendant's waiver of counsel is knowingly and intelligently made."); *United States v. Twitty*, No. 13-CR-0076-WJM, 2013 WL 3851250, at *1 n.1 (D. Colo. July 25, 2013) (citing *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983)) (stating the Ninth Circuit draws a distinction between standby and advisory counsel but seeing no such distinction in Tenth Circuit case law).

Mr. Pawelski sought subpoenas for 53 witnesses. The court allowed at least two subpoenas to issue, denied some, and instructed Mr. Pawelski to send the remaining subpoenas to the Government to review. Mr. Pawelski contends the district court erred by not issuing the subpoenas and by seeking input from the Government.

## 1. **Additional Background**

At a final pretrial conference on October 9, 2014, Mr. Pawelski asked the court to issue 53 subpoenas. The court pointed out that "a significant number" were witnesses the prosecution planned to call at trial. Pawelski ROA, Vol. V at 122. The court then inquired about Mr. Pawelski's request to subpoena various individuals and entities that were not on the Government's witness list, including the United States, a judge who had issued a search warrant, the Secretary of the Treasury, the United States Attorney General, United States Marshals, and members of Congress.

Mr. Pawelski told the court he needed to subpoena the Government's witnesses to bring documents to trial. The court said:

> I am not going to let you do discovery right before trial, Mr. Pawelski. These are issues that if you wanted documents, they should have been subpoenas that came before me several months ago. I will need to take a look at how broadly your request for documentation is. But if it is your entire file related to this, that is going to be overbroad.

Pawelski ROA, Vol. V at 136.

The court allowed the issuance of at least two subpoenas, denied a handful of others, and told Mr. Pawelski to provide the remaining proposed subpoenas to the Government. The court stated it would hear arguments from the parties regarding the

issuance of the remaining subpoenas after the Government had a chance to review them.

On October 10, 2014, Mr. Pawelski filed a "Motion for Court Order for Petitioner to receive contact information." Doc. No. 298. The motion asked for government witnesses' contact information so Mr. Pawelski could subpoena them. *Id.*

On October 23, 2014, Mr. Pawelski filed a motion seeking to "cancel[] the orders for subpoenas." Pawelski ROA, Vol. I at 941. The court granted the request on the first day of trial.

2. **Standard of Review**

We review "the district court's refusal to issue a subpoena pursuant to [Federal Rule of Criminal Procedure 17(b)] for an abuse of discretion." *United States v. Hernandez Urista*, 9 F.3d 82, 83 (10th Cir. 1993).

3. **Legal Standard**

Rule 17(b) states:

(b) Defendant Unable to Pay. Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

"To show necessity, a defendant must establish that the witness's testimony is relevant, material, and useful." *United States v. Pursley*, 577 F.3d 1204, 1230 (10th Cir. 2009) (quotations omitted). Adequate grounds for denial of a request for a subpoena include cumulative testimony, untimely requests, and delays of trial. *Id.*

-17-

4. **Analysis**

Mr. Pawelski contends the district court deprived him of his "right to present a defense, his right to compulsory process, and his right to fundamentally fair proceedings" by not issuing subpoenas under Federal Rule of Criminal Procedure 17. Pawelski Aplt. Br. at 33. He also argues the district court erred by seeking input from the Government regarding the requested subpoenas. Mr. Pawelski's arguments fail for at least three reasons.

First, Rule 17 requires an indigent defendant to file an ex parte application with the court. Fed. R. Crim. P. 17(b); *Pursley*, 577 F.3d at 1230 . Mr. Pawelski concedes he failed to do so. Pawelski Aplt. Br. at 32.

Second, Mr. Pawelski does not specify which subpoenas the district court did not issue. His briefing mentions only the two subpoenas that the court allowed to issue. He has therefore failed to demonstrate error related to specific unissued subpoenas.

Third, Mr. Pawelski withdrew his request for subpoenas. The district court did not abuse its discretion by not issuing subpoenas that Mr. Pawelski withdrew.

D. **ISSUES # 5-7:** *Ms. Vigil's Self-Representation*

Ms. Vigil contends the district court erred by failing to (1) order a competency evaluation before determining whether she adequately waived her right to counsel, (2) revoke her right to self-representation, and (3) appoint advisory counsel.

1. **ISSUE # 5: Competency Evaluation (Ms. Vigil)**

Ms. Vigil contends the district court erred by concluding she was competent to

-18-

waive her right to counsel without first ordering a competency evaluation.

    a.  *Additional background*

On July 17, 2014, Ms. Vigil moved to dismiss her attorney and to represent herself.  In her counseled motion, Ms. Vigil reported that she had been in a car accident in February 2013 that caused "a concussive head injury with some memory loss, blurred vision, loss of focus and other diminished cognitive functions for several months."

The motion also described an informal mental health evaluation from Nicole Kitei, Ph.D.:  "Although formal testing was not performed, Dr. Kitei advised Defense Counsel that Ms. Vigil appeared to be functioning relatively normally during the interview process, appeared to be of normal intelligence and did not appear impaired by mental disease or defect."  Vigil ROA, Vol. I at 252.  The motion also stated, "Other than continued reporting of memory loss, Defense Counsel has not detected other obvious signs of cognitive deficits during interactions with Ms. Vigil."  Vigil ROA, Vol. I at 252.  Ms. Vigil did not submit testimony or any evidence related to her mental health evaluation outside her counsel's statements in the July 17, 2014 motion.

On August 15, 2014, the court held a *Faretta* hearing for Ms. Vigil.  The court asked Ms. Vigil questions and learned that she:

- Wanted to represent herself instead of obtaining a new lawyer.
- Believed she was competent to represent herself.
- Was 63 years old.
- Had a high school degree and some college education.

- ▪ Was not receiving medical treatment for any physical or mental condition.

- ▪ Was not taking any medication.

- ▪ Did not have a physical disability that would hinder her ability to represent herself.

- ▪ Was not under the influence of alcohol or drugs.

- ▪ Had not been told she should proceed pro se.

- ▪ Had never represented herself in a legal proceeding.

- ▪ Understood the charges against her and the potential penalties.

- ▪ Understood her attorney was experienced, it was "unwise" to represent herself, and she would not receive any "special treatment" from the court or the Government on account of her pro se status.

- ▪ Understood she was required to act professionally in the courtroom and could be removed to a holding cell if she were disruptive.

- ▪ Understood she could not testify without taking an oath.

- ▪ Understood she could not appeal a conviction based on her lack of knowledge or skill as a pro se litigant.

Vigil Supp. ROA, Vol. II at 7-20.

Ms. Vigil stated the court had been "very clear" about the "dangers and disadvantages" of proceeding pro se and she did not have any questions for the court. *Id.* at 20. She affirmed that she wanted her attorney to withdraw so that she could proceed pro se. *Id.* at 25.

The court concluded Ms. Vigil knowingly, voluntarily, and intentionally waived her right to counsel. Ms. Vigil contends the district court erred by determining she was competent to waive her right to counsel without first ordering a competency evaluation.

-20-

b.  *Standard of review*

A district court's determination whether to order a competency evaluation is reviewed for an abuse of discretion.  *United States v. Patterson*, 713 F.3d 1237, 1242 (10th Cir. 2013).

c.  *Legal standard*

A defendant has the right to represent herself and can do so by waiving her Sixth Amendment right to counsel.  *Faretta*, 422 U.S. at 819.  District courts usually determine whether a defendant has waived that right by conducting a *Faretta* hearing.  *Vann*, 776 F.3d at 763.

"[T]he standard both for competence to stand trial and to waive counsel is the same," and the "duty to ensure that a waiver is competent and knowing falls squarely on the trial court judge."  *Maynard v. Boone*, 468 F.3d 665, 672, 677 (10th Cir. 2006).  "Due process requires a trial court to conduct a competency hearing sua sponte whenever the evidence raises a bona fide doubt as to the defendant's competence to stand trial." *Coleman v. Saffle*, 912 F.2d 1217, 1224 (10th Cir. 1990) (quotation omitted).

In evaluating the need for a competency evaluation, the district court may rely on the defense counsel's observations.  *Bryson v. Ward*, 187 F.3d 1193, 1201-02 (10th Cir. 1999) ("Defense counsel is often in the best position to determine whether a defendant's competency is questionable.").  Further, the decision whether to order a competency evaluation "is a matter wholly within the sound discretion of the trial court," and we give weight to the court's observations of the defendant's mental health status.  *United States*

-21-

*v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991).

    d.  *Analysis*

Ms. Vigil contends the district court erred in 2014 by not ordering a competency evaluation even though it was aware of her 2013 car accident that resulted in "concussive head injury with some memory loss, blurred vision, loss of focus and other diminished cognitive functions for several months."  Vigil Aplt. Br. at 38; Vigil ROA, Vol. I at 251.

The district court did not order a competency evaluation after observing Ms. Vigil's in-court conduct and conducting a *Faretta* hearing.  The court also received a motion from Ms. Vigil's counsel stating Dr. Kitei performed an informal evaluation and concluded Ms. Vigil "did not appear impaired by mental disease or defect."  Vigil ROA, Vol. I at 252.  Further, the motion stated, "Other than continued reporting of memory loss, Defense Counsel has not detected other obvious signs of cognitive deficits during interactions with Ms. Vigil."  Vigil ROA, Vol. I at 252.

In sum, the court, Ms. Vigil's attorney, and Dr. Kitei observed no signs of mental impairment.  And Ms. Vigil provided no medical evidence showing otherwise.  We therefore conclude the district court did not abuse its discretion in not ordering an evaluation.

2.  **ISSUE # 6:  Revocation of Self-Representation (Ms. Vigil)**

The district court determined Ms. Vigil was competent to waive her Sixth Amendment right to counsel after a *Faretta* hearing.  Ms. Vigil argues the court should have revoked her Sixth Amendment right to self-representation and imposed counsel on

her after observing her conduct in subsequent hearings.

     a.  *Standard of review*

Ms. Vigil does not articulate a standard of review for this argument, and it appears to be an open question.  We need not decide the issue because Ms. Vigil's arguments fail under de novo or abuse-of-discretion review.

     b.  *Legal standard*

As previously stated, a defendant can invoke her right to self-representation if (1) she "clearly and unequivocally inform[s] the district court of [her] intention to represent [herself]," (2) "the request [is] timely and not for the purpose of delay," (3) "the court . . . conduct[s] a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is knowingly and intelligently made," and (4)  "the defendant [is] able and willing to abide by rules of procedure and courtroom protocol." *Tucker*, 451 F.3d at 1180 (quotations omitted).

 A district court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  *Faretta*, 422 U.S. at 834 n.46.

     c.  *Analysis*

Ms. Vigil argues the district court should have revoked her right to self-representation because she was (1) "unwilling to follow court protocol and procedure" and (2) "unable to perform basic trial tasks."  Vigil Aplt. Br. at 42.  Her argument is limited to the court's failure to revoke her Sixth Amendment right to self-representation;

she does not argue the court erred in initially concluding she was competent to waive her Sixth Amendment right to counsel.

> ### i.   Ms. Vigil's unwillingness to follow court rules and protocol

Ms. Vigil argues the district court should have revoked her right to self-representation because she "was not willing" to follow court protocol and procedure. Vigil Aplt. Br. at 42.  She points out she refused to respond to the court's request to state her name for the record at "a motions hearing and trial preparation conference."  *Id.* at 41. Instead, she stated she was a "private," "living breathing woman of the land."  *Id.*  She also asserts she filed "frivolous and incoherent documents with the district court."  *Id.* Ms. Vigil's argument fails for at least two reasons.

First, she cites no authority showing the district court was required to revoke her Sixth Amendment right to self-representation.  She does not argue the district court erred in determining she was competent to revoke her Sixth Amendment right.  Instead, she argues the court erred in not revoking the Sixth Amendment right to self-representation. She correctly notes a district court "*may* terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  *Faretta*, 422 U.S. at 834 n.46 (emphasis added).  But she cites no case stating a district court *must* revoke the right to self-representation if the defendant indicates she will not follow court protocol and procedure.

Second, Ms. Vigil's behavior at hearings did not necessarily indicate she would continually refuse to follow the courtroom protocol and procedures.  At the *Faretta*

hearing, the court noted Ms. Vigil had "been very professional" throughout the

prosecution, which had been ongoing for nearly a year.  Vigil Supp. ROA, Vol. II at 17.

In addition, Ms. Vigil was absent for most of the trial, making it impossible to know

whether she would have refused to follow the proper courtroom protocol and procedures

throughout the trial.

We note the district court's difficult position in deciding whether to revoke Ms.

Vigil's constitutional right to represent herself.  On the one hand, Ms. Vigil demonstrated

disrespectful and uncooperative behavior at times.  On the other hand, she insisted on

representing herself, and the court concluded she was competent to do so after conducting

a *Faretta* hearing.  She now asserts the court should have revoked her previously sought-

after constitutional right to proceed pro se.  But given the lack of authority that the

district court was required to do so, Ms. Vigil's professional conduct throughout much of

the prosecution, and her absence from trial, we conclude the district court did not err.

      ii.  <u>Ms. Vigil's inability to perform basic trial tasks</u>

Ms. Vigil next contends the district court should have revoked her self-

representation because she could not perform basic trial tasks and made frivolous

arguments.

<u>First</u>, Ms. Vigil's citation to *Indiana v. Edwards*, 554 U.S. 164 (2008) is inapt.  In

*Edwards*, the Supreme Court held, "[T]he Constitution permits States to insist upon

representation by counsel for those competent enough to stand trial . . . but who still

suffer from severe mental illness to the point where they are not competent to conduct

-25-

trial proceedings by themselves." 554 U.S. at 178. No such showing was made here.
Moreover, after determining Ms. Vigil was competent to waive her right to counsel, the
district court was not required to impose counsel on Ms. Vigil.

Second, Ms. Vigil cannot demonstrate she lacked the ability to perform basic trial
tasks because she was absent for most of the trial. Her closing argument focused on jury
nullification and used tax-protesting rhetoric. But that did not indicate she lacked the
ability to perform trial tasks. It showed she was firm in her resolve to advance her views
as a tax protestor.

*   *   *   *

The district court did not err in not revoking Ms. Vigil's Sixth Amendment right to
self-representation.

3. **ISSUE # 7:  Advisory Counsel (Ms. Vigil)**

Ms. Vigil argues the district court erred by not appointing advisory counsel for
her.

a. *Additional background*

At the August 15, 2014 hearing, Ms. Vigil's counsel told the court that it was
difficult for him and an investigator to work with Ms. Vigil "because of her distrust of
[them]." Vigil Supp. ROA, Vol. III at 17. He stated, "[F]rankly there is a certain amount
of animosity she has towards us." *Id.* He also told the court that appointing another
attorney would probably not be effective because of Ms. Vigil's distrust of attorneys.

Nevertheless, he stated, "The Court might consider appointing another attorney in

-26-

my stead to, on a trial basis, or almost an advisory basis.  I know the Court is disinclined to have advisory counsel." *Id.* at 19.  The court responded, "Especially when [defendants] indicate to me that they don't want to have counsel and they have that distrust.  It is a waste of taxpayer money." *Id.*

The court then said to Ms. Vigil, "I will ask you once again, it is your wish, is that correct, to have [your attorney] be withdrawn and for you to represent yourself as opposed to having me appoint a different lawyer?" *Id.* at 20.  Ms. Vigil said, "Yes, that is correct." *Id.*

Ms. Vigil represented herself during trial and sentencing.

b.  *Analysis*

As stated above, we review the district court's decision whether to appoint advisory counsel for abuse of discretion, *DePugh*, 452 F.2d at 920, and the appointment of advisory counsel is "a preferred, though not mandatory, practice," *Padilla*, 819 F.2d at 959.

Ms. Vigil did not request advisory counsel.  At the *Faretta* hearing, her dismissed attorney suggested that the court consider appointing advisory counsel.  The court stated it was leery to do so because Ms. Vigil had insisted on representing herself and expressed "distrust" of and "animosity" toward her dismissed attorney based on his unwillingness to advance tax-protestor arguments.  Vigil Supp. ROA, Vol. III at 17.

Because the district court was not required to appoint advisory counsel, we cannot conclude it abused its discretion by declining to do so.

E.  **ISSUE # 8:**  *The District Court's Statements to the Venire (Mr. Brokaw, Mr. Pawelski, and Ms. Vigil)*

Appellants contend the district court erred when it responded to a statement by the potential juror in chair number 3.  Mr. Brokaw and Ms. Vigil both briefed the issue and incorporated each other's arguments.  Mr. Pawelski incorporated both arguments.  Appellants argue the court's statements infringed their rights under the Fifth Amendment and violated Federal Rule of Evidence 404, which excludes evidence of bad character.

1.  **Additional Background**

    a.  *Appellants' disruption and exit*

Appellants' jury trial began on November 1, 2014, with jury selection.  Before the potential jurors entered the courtroom, the court addressed some of Appellants' motions.  Appellants began interrupting the court.  The court admonished them to sit down.

They refused to sit and continued interrupting, stating, among other things, they did not consent to the court's jurisdiction, they had "filed a revisionary interest," and they were the "beneficiar[ies] for the trust."  Brokaw ROA, Vol. III at 168-80.  At one point, Ms. Vigil asked the court six times, "Do you have a claim against me?"  *Id.* at 174.

The court eventually brought the jury venire in.  While the court was giving instructions to the jury venire, Appellants placed their birth certificates on the counsel table and each stated, "The defendants are on the table."  *Id.* at 187.  They then started leaving the courtroom.  The court told them to stop and then stated, "Let the record reflect that the defendants have decided to leave the courtroom."  *Id.* at 188.  The

transcript then states, "(Defendants are removed from the courtroom.)" *Id.*

While the court continued with voir dire, Appellants were escorted to a holding cell where they could hear an audio feed of the proceedings. They did not participate in jury selection.

b. *The potential juror's question*

After Appellants left the courtroom, the court explained to the venire that the Defendants were presumed innocent, the burden of proof was on the Government, the Defendants had a right not to testify, and the Defendants did not have the burden of calling witnesses or presenting evidence.

The prospective juror sitting in chair number 3 had the following exchange with the court:

> CHAIR NO. 3: I don't know if this really affects anything, but just the display this morning, I don't know at what point that weighs into my impartiality.

> THE COURT: Well, and I have warned the defendants about that. And they made the choice to go ahead and proceed. So, I mean, your decision, if you are chosen as a juror, is to just take in all of the facts. You will have to judge credibility and all of that. And the way people behave is a part of that.

> CHAIR NO. 3: Okay.

*Id.* at 237-38. Later during voir dire, the potential juror stated, "I would base my verdict wholly on the evidence presented. And I am a rules girl, so I would follow instructions." *Id.* at 246. She was subsequently selected as a juror.

When the jury was empaneled and sworn in, the court told them: "[D]uring the

-29-

course of the trial, you will receive all of the evidence you legally may consider to try the

case . . . and you may consider to decide the case.  You, as jurors, must decide this case

based solely on the evidence presented here within the four walls of this courtroom."  *Id.*

at 286.

> During the final jury instructions at the close of evidence, the court stated:
>
> The Defendants' voluntary absence from the courtroom during the trial is
> unrelated to their guilt or innocence.  Their absence is not evidence in this
> case and should not be considered as you decide whether each Defendant
> has been proved guilty of the crimes charged.  My legal rulings are not
> evidence.  My comments and questions are not evidence.

Vigil ROA, Vol. I at 920.

2.  **Standard of Review**

Appellants voluntarily left the courtroom during voir dire and did not object to the

district court's statement.  Plain-error review applies here when a defendant fails to object

at voir dire, even when constitutional issues arise.  *United States v. Portillo-Quezada*, 469

F.3d 1345, 1349 (10th Cir. 2006) (reviewing unpreserved constitutional argument

challenging voir dire proceedings for plain error).

Under Federal Rule of Criminal Procedure 52(b), "A plain error that affects

substantial rights may be considered even though it was not brought to the court's

attention."  Plain error exists when (1) there is an "error" (2) that is "plain" and (3) that

"affects substantial rights," and (4) "seriously affects the fairness, integrity or public

reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 732 (1993)

(quotations and brackets omitted).

-30-

An error is plain when it is "clear" or "obvious." *Id.* at 734. An error affects substantial rights if it is prejudicial, which means it is material to the outcome of the case. *Id.* ("It must have affected the outcome of the district court proceedings."); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 75 (2004) (holding defendant must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different" (quotations omitted)).

3. **Appellants' Arguments**

Mr. Brokaw contends the district court's statement constituted reversible error for three reasons. <u>First</u>, he argues the statement infringed his Fifth Amendment right not to testify "by tending to force [him] to take the stand in reaction to or in contemplation of the comments on th [his] behavior at trial." Brokaw Aplt. Br. at 9.

<u>Second</u>, he claims the statement infringed his Fifth Amendment right to be convicted only on the basis of the evidence at trial and that he had "no opportunity to present evidence supporting an inference contrary to the inference suggested by [the court]." *Id.*

<u>Third</u>, he contends the statement was evidence of bad character, which Federal Rule of Evidence 404 prohibits. *Id.* at 10.

Ms. Vigil argues the court's comment violated her right to an impartial jury, undermined the presumption of innocence, and suggested to the jury that the court had made its own credibility determination. She also contends the court "reinforced its erroneous and prejudicial instruction by repeatedly referring to Vigil's absence." Vigil

Aplt. Br. at 27-28.

4. **Analysis**

Even assuming the district court's statement constituted error that was plain,
Appellants fail on step three of plain-error review because they have not shown prejudice.
*Olano*, 507 U.S. at 732 (stating an error affects substantial rights if it is prejudicial).  The
district court instructed the jury at least two times to base its verdict solely on the trial
evidence.  As soon as the jury was empaneled on the first day of trial, the district court
told it to consider only evidence presented at trial.  At the close of evidence, the court
directed the jury not to consider the Defendants' absence or the court's statements as
evidence.  Under our precedent, we presume the jury followed the instructions, *see Banks
v. Workman*, 692 F.3d 1133, 1150 (10th Cir. 2012) ("The law presumes juries follow
instruction."), and there is no indication here to the contrary.  Further, Appellants
presented no evidence at trial and do not argue on appeal that the Government did not
meet its burden of proof.  They have not shown "a reasonable probability that, but for the
error claimed, the result of the proceeding would have been different."  *Dominguez
Benitez*, 542 U.S. at 75 (quotations and brackets omitted).

We conclude the district court's statements do not constitute plain error.

F.  **ISSUE # 9:  *The District Court's Failure to Dismiss Potential Juror (Mr. Brokaw,
Mr. Pawelski, and Ms. Vigil)***

Appellants argue the district court erred by failing to dismiss the potential juror in
chair number 3.  Mr. Brokaw briefed the issue; Mr. Pawelski and Ms. Vigil incorporated

Mr. Brokaw's argument.

1. **Standard of Review**

The parties dispute the standard of review.  Appellants argue we consider de novo whether a defendant's Sixth Amendment right to an impartial jury has been violated. They further contend "[t]he denial of the right to an impartial adjudicator is a structural error that can never be harmless."  Brokaw Aplt. Br. at 13.  The Government contends the alleged error is not structural and plain error applies.

We need not determine which standard applies because there was no error.

2. **Legal Standard**

The Sixth Amendment grants a defendant the right to an impartial jury.  U.S. Const. amend. VI.  "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  "It is the responsibility of the district court to guarantee that the jury is fair and impartial. . . .  Reversal is required if the specific circumstances suggest a significant risk of prejudice and if examination or admonition of jurors fails to negate that inference." *United States v. Gillis*, 942 F.2d 707, 709-10 (10th Cir. 1991).  The Supreme Court has noted that "the Constitution lays down no particular tests" for ascertaining impartiality. *Frazier v. United States*, 335 U.S. 497, 511 (1948).  Thus, "in each case a broad discretion and duty reside in the court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality."  *Id.*

3. **Analysis**

The juror in chair number 3 stated, "I don't know if this really affects anything, but just the display this morning, I don't know at what point that weighs into my impartiality." Brokaw ROA, Vol. III at 237-38. She later stated during jury selection that she "would base [her] verdict wholly on the evidence presented" and "follow instructions." *Id.* at 246.

These statements do not raise "a significant risk of prejudice," *Gillis*, 942 F.2d at 710, or indicate the juror lacked impartiality, *Goss*, 439 F.3d at 627. The juror's first statement was equivocal at best and did not indicate bias. Even if her first statement could be interpreted as expressing concerns about impartiality, she later stated unequivocally that she would base her verdict solely on the evidence and follow instructions.

Further, the court instructed the jury after it was empaneled to consider only the evidence presented at trial. At the close of evidence, the court specifically instructed the jury not to consider the Defendants' absence. And we must presume the jury followed those instructions. *Banks*, 692 F.3d at 1150.

In sum, the juror's first statement did not "suggest a significant risk of prejudice." *Gillis*, 942 F.2d at 710. And even if it did, the juror's subsequent statement and the court's instructions "negate[d] that inference." *Id.* We therefore conclude the district court did not err in empaneling the prospective juror in chair number 3.

G. **ISSUE # 10:** *The District Court's Statements Regarding the Defendants'*
*Obligation to Attend Trial (Mr. Brokaw, Mr. Pawelski, and Ms. Vigil)*

Appellants contend the district court erred when it stated they could decide not to attend trial. Ms. Vigil briefed the issue; Mr. Brokaw and Mr. Pawelski incorporated her argument.

1. **Additional Background**

After the court released the jury panel at the close of voir dire, the Defendants were brought back to the courtroom. The court stated:

> Mr. Brokaw, Mr. Pawelski, and Ms. Vigil, I have been trying to figure out how we should proceed in the face of your refusing to participate in these proceedings. And I have conducted some research, Rule 43(c)(1) of the Federal Rules of Criminal Procedure allow a defendant who was initially present at trial, which you have been, to waive the right to be present when you voluntarily absent yourself after the trial has begun, which is what you have essentially done, saying I have no jurisdiction.

> So you can voluntarily waive your right to be present after the trial begins if you chose to do so. . . .

> Now, I strongly advise you against what you are doing in terms of absenting yourself from these proceedings. I think it is important and in your best interest to be here. That being said, the decision ultimately whether you are present or not is yours. This trial will go on without you. And so you will still be subject to the verdict. . . .

> But I don't want to have to put you into custody at this point. I don't want to force you to attend trial if you do not wish to participate. You have to understand, though, that if you don't participate and you are convicted, you are going to have to surrender as the Court will order you to do.

> So, I just want to make sure you understand the rights you are giving up. You have the right to this speedy and public trial. You have the right to trial and to participate in the trial with this jury. You have the right to have competent assistance of an attorney, which you have given up months ago. You have the right to confront and cross-examine the witnesses and the

evidence presented against you. By not participating, you are giving up that right.

Brokaw ROA, Vol. III at 373-75.

The court then asked if the Defendants understood.  Each answered in the

affirmative.  The court then stated:

> So I am leaving it to you. I will not order you to be here at 8 o'clock
> tomorrow. I will leave that to you. You are free, hopefully, to change your
> minds about participating. And, if you do, then I would expect you -- court
> will start at 8 o'clock tomorrow morning. So if you change your minds and
> you want to participate, then you need to be here promptly at 8 o'clock
> tomorrow morning.

*Id.* at 376.  The court instructed the Defendants to notify their probation officers if they

did not plan to attend the trial and that the Defendants were required to be in court when

the verdict is returned.

Ms. Vigil later emailed her probation officer, stating she would not attend the

second day of trial.  She also stated that "the birth certificate does not need to be in the

Court.  As agent for the general executive office, I will not be bringing the birth

certificate because the Judge says it doesn't need to be there."  Vigil ROA, Vol. V at 384.

Mr. Brokaw and Mr. Pawelski did not brief this issue, so it is unclear whether they

informed their probation officers they would not be attending.

All three Defendants were absent until the final day of trial.  During the final day,

they performed limited cross-examination and gave closing arguments.

## 2.  **Standard of Review**

The Government and the Appellants agree that the standard of review is de novo

-36-

as to whether the court misstated the law regarding their trial attendance.  "[W]e review legal questions de novo."  *United States v. Cherry*, 572 F.3d 829, 831 (10th Cir. 2009).

### 3.  **Legal Standard**

"One of the most basic of the rights guaranteed by the Confrontation Clause of the Sixth Amendment is the accused's right to be present at every stage of his trial." *Ellis v. Oklahoma*, 430 F.2d 1352, 1354 (10th Cir. 1970).  But a defendant can choose not to attend trial.  In *Taylor v. United States*, 414 U.S. 17 (1973), the Supreme Court held that a district court can proceed with a trial when a defendant voluntarily absents himself after it starts.  414 U.S. at 19 (stating a defendant's voluntary absence "does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present").  Federal Rule of Criminal Procedure 43(c) provides that a defendant can waive his right to be present at trial:

> (c) Waiving Continued Presence.

>> (1) In General. A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:

>>> (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial;

>>> (B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or

>>> (C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in

-37-

conduct that justifies removal from the courtroom.

> (2) Waiver's Effect. If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence.

4. **Analysis**

The district court encouraged Appellants to attend trial: "Now, I strongly advise you against what you are doing in terms of absenting yourself from these proceedings. I think it is important and in your best interest to be here." Vigil ROA, Vol. V at 374. The court then stated that, under Rule 43, Appellants could voluntarily absent themselves.

Appellants argue the district court erred by stating they were not required to attend trial. In particular, they contend, "Nothing in Rule 43 allows a district court to affirmatively instruct a defendant that participation at trial is voluntary. Rule 43 indicates Defendants have an obligation to remain at their criminal trials." Vigil Aplt. Br. at 32. We disagree.

The court's statements were consistent with Rule 43(c), which states a defendant waives his or her right to be present at a trial "when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial." Rule 43(c) acknowledges that Defendants can voluntarily be absent from trials and does not state that district courts must require Defendants to attend. Further, the Supreme Court has held a trial can proceed when a

-38-

defendant is voluntarily absent. *See Taylor*, 414 U.S. at 19.

The district court did not err when it told Appellants they could waive their right to attend trial.

H. **ISSUE # 11:** *Jury Instructions (Mr. Brokaw, Mr. Pawelski, and Ms. Vigil)*

Appellants argue the jury instructions were erroneous because (1) Jury Instruction 12 actually amended Counts 1 and 14 of the First Superseding Indictment, and (2) Jury Instructions 13 and 15 constructively amended Counts 1 and 14. Mr. Pawelski briefed this issue; Mr. Brokaw and Ms. Vigil incorporated his arguments.

1. **Additional Background**

Appellants were convicted on two conspiracy counts: Count 1 for conspiracy to file false claims for tax refunds and Count 14 for conspiracy to corruptly endeavor to obstruct or impede the due administration of the internal revenue laws. They argue (1) Jury Instruction 12 actually amended Counts 1 and 14 and (2) Jury Instructions 13 and 15 constructively amended Counts 1 and 14.

a. *Jury Instruction 12*

Counts 1 and 14 were reprinted in Jury Instruction 12.

i. Count 1

The First Superseding Indictment contained the following heading for Count 1:

**COUNT 1**

**George Thomas Brokaw, John J. Pawelski,
Mimi M. Vigil, and Clara M. Mueller
(18 U.S.C. § 286 – Conspiracy to File False Claims for Refund)**

-39-

Pawelski ROA, Vol. I at 67.

Jury Instruction 12 contained the following heading for Count 1:

<u>COUNT 1</u>

**George Thomas Brokaw, John J. Pawelski, and
Mimi M. Vigil
(18 U.S.C. § 286 – Conspiracy to File False Claims for Refund)**

*Id.* at 1177.  The only difference between Count 1 in the First Superseding Indictment and Count 1 in Jury Instruction 12 was that Ms. Mueller's name did not appear in the heading of the latter.  The two copies of Count 1, in the First Superseding Indictment and Jury Instruction 12, were otherwise identical.

    ii.  <u>Count 14</u>

Count 14 of the First Superseding Indictment contained the following heading:

<u>COUNT 14</u>

**George Thomas Brokaw, John J. Pawelski,
Mimi M. Vigil, and Clara M. Mueller
(18 U.S.C. § 371 – Conspiracy to
Corruptly Endeavor to Obstruct or Impede the Due
Administration of the Internal Revenue Laws)**

*Id.* at 74.

Jury Instruction 12 contained the following heading for Count 14:

<u>COUNT 14</u>

**George Thomas Brokaw, John J. Pawelski, and
Mimi M. Vigil
(18 U.S.C. § 371 – Conspiracy to
Corruptly Endeavor to Obstruct or Impede the Due
Administration of the Internal Revenue Laws)**

-40-

*Id.* at 1182.  The Count 14 heading in Jury Instruction 12 excluded Ms. Mueller's name.  *Id.*  Count 14 had three subheadings:  "A. The Conspiracy," "B. Manner and Means of the Conspiracy," and "C. Overt Acts of the Conspiracy."  *Id.* at 74-80.

While reading Instruction 12 to the jury, the district court redacted Ms. Mueller's name in paragraph 19 under subheading A:

> 19.    From on or about sometime in March 2008, and continuing through on or about sometime in April 2012, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, Defendants George Thomas Brokaw, John J. Pawelski, Mimi M. Vigil, ~~and Clara M. Mueller~~ did unlawfully, voluntarily, intentionally, knowingly and willfully conspire, combine, confederate, and agree together with each other and other individuals both known and unknown to the Grand Jury to corruptly endeavor to obstruct and impede the due administration of the Internal Revenue laws by attempting to thwart the legitimate collection of taxes owed to the IRS by them and others and to reduce their tax liability and the tax liability of others to the IRS, all in violation of Title 26, United States Code, Section 7212(a).

*Id.* at 1183.

The court also redacted her name in paragraphs 21 and 22 under subheading B:

21.    Defendants George Thomas Brokaw, John J. Pawelski,

Mimi M. Vigil, and Clara M. Mueller submitted and caused to be filed or submitted to the

IRS a variety of false, fraudulent, or illegitimate documents which purported to constitute

payments of taxes owed to the IRS.  These documents included "Private Registered

Bonds for Setoff," "Private Registered Indemnity Bonds," "Registered Private Offset and

Discharge Bonds," and "Registered Bonded Promissory Notes."  The defendants also

used other similar documents for this purpose, including IRS documents on which they

added handwritten text such as "money order" or "accepted for value," as well as

purported electronic funds transfer (EFT) instruments drawn on closed bank accounts.

22.    Defendants George Thomas Brokaw, John J. Pawelski,

Mimi M. Vigil, and Clara M. Mueller filed, submitted, and caused to be filed or submitted

a variety of false and fraudulent liens or other documents which falsely claimed that IRS

employees, who were engaged in legitimate tax collection efforts against one or more of

the defendants, owed one or more of the defendants amounts of money ranging from

tens of millions of dollars to billions of dollars.

*Id.* at 1183-84.

In sum, the differences between Count 14 in the First Superseding Indictment and

Count 14 in Jury Instruction 12 were (1) Ms. Mueller's name did not appear in the Count

1 heading in Jury Instruction 12 and (2) the district court redacted Ms. Mueller's name

three times in Jury Instruction 12.  *Id.* at 67, 74-80, 1182-88.

b.  *Jury Instructions 13 and 15*

In relevant part, Jury Instruction 13 stated:

To find a Defendant guilty of this crime, you must be convinced that
the Government has proved each of the following elements beyond a

reasonable doubt:

> First: The defendants agreed with at least one other person to obtain or aid in obtaining the payment or allowance of any false, fictitious, or fraudulent claim . . . .

*Id.* at 1191.

Jury Instruction 15 stated, "To find a Defendant guilty of this crime, you must be convinced that the Government has proved each of the following elements beyond a reasonable doubt: First: The defendants agreed with at least one other person to violate the law . . . ." *Id.* at 1193.

## 2. **Standard of Review**

The parties agree this issue was not preserved and is subject to plain-error review. Pawelski Aplt. Br. at 35; Aplee. Br. at 21; *see also United States v. Edwards*, 782 F.3d 554, 561 (10th Cir. 2015) (stating unpreserved allegations of error are reviewed for plain error).

## 3. **Legal Standard**

"It is axiomatic in our legal system that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008) (quotation omitted). The Fifth and Sixth Amendments prohibit the government from actually or constructively broadening an indictment without resubmitting it to the grand jury. *Stirone v. United States*, 361 U.S. 212, 215-16 (1960); *Id.* at 1179.

-43-

The government may offer proof, and the court may provide instructions, that narrow the indictment without running afoul of constitutional rights. *See United States v. Miller*, 471 U.S. 130, 140-45 (1985); *Farr*, 536 F.3d at 1180. The "ultimate inquiry is whether the crime for which the defendant was convicted at trial was charged in the indictment; to decide that question, we therefore compare the indictment with the district court proceedings to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document." *Farr*, 536 F.3d at 1180.

The question here is whether the jury instructions broadened the conspiracy charges. "[T]he evidence in a conspiracy prosecution must show that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily became a part of it." *United States v. Morehead*, 959 F.2d 1489, 1499 (10th Cir. 1992) (quotation omitted); *see also United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) ("[T]he government must prove the following elements beyond a reasonable doubt: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." (quotation omitted)).

4. **Analysis**

Appellants make two arguments. Both are unconvincing.

First, they argue Jury Instruction 12 amended the First Superseding Indictment

because, in Jury Instruction 12, Ms. Mueller's name was absent from the headings of Counts 1 and 14 and it was redacted in some parts of Count 14.

The absence of Ms. Mueller's name from Jury Instruction 12 was, however, permissible.   The jury was not required to find a "four-person agreement" as Appellants suggest.  Rather, the jury had to find that "two or more persons agreed to violate the law." *Morehead*, 959 F.2d at 1499 (quotation omitted).  Indeed, an acquittal of an alleged conspirator does not vitiate the conviction of another conspirator, as long as the jury finds the convicted conspirator agreed with one or more people to break the law.  *Apodaca v. United States*, 188 F.2d 932, 940 (10th Cir. 1951).

When an indictment alleges conspiracy among only specifically named defendants, the potential criminal conduct broadens with each name added to the indictment.  Each additional named defendant is another potential coconspirator whom the jury can find agreed with the defendant to violate the law.  Conversely, when the government removes a named defendant from the indictment, there is less potential criminal conduct because there are fewer potential coconspirators.  Thus, omitting Ms. Mueller's name removed a potential conspirator from the instructions and narrowed the conduct on which the jury could convict for conspiracy.  In other words, the jury could not convict based on any of the remaining Defendants' agreement with Ms. Mueller because her name was removed as part of the narrowing amendment.

A jury instruction can narrow the indictment without running afoul of constitutional rights. *See Miller*, 471 U.S. at 140.  We therefore conclude the absence of

Ms. Mueller's name from Jury Instruction 12 did not impermissibly amend the indictment.

<u>Second</u>, Appellants argue Jury Instructions 13 and 15 constructively amended Counts 1 and 14 by stating the jury needed to find an agreement between each defendant and "at least one other person."  Pawelski Aplt. Br. at 41.  In particular, they assert the instructions "allow[ed] members of the jury to find guilt based upon their determination that [each Defendant] entered into some agreement with any other single person, *rather than making the requisite finding that [each Defendant] agreed with the other three specifically named persons*."  *Id.* at 41 (emphasis in original).

Jury Instructions 13 and 15 did not constructively amend Counts 1 and 14.  Counts 1 and 14, as contained in Jury Instruction 12, alleged a conspiracy among Mr. Brokaw, Ms. Pawelski, and Ms. Vigil.  Appellants contend Jury Instructions 13 and 15 amended Counts 1 and 14 by stating the jury could convict a defendant of conspiracy if it found, among other elements, that "[t]he Defendant agreed with at least one other person" to commit a crime.  Pawelski ROA, Vol. I at 1191, 1193.  This argument erroneously presumes the jury had to find that each defendant agreed with every other defendant.  But the law of conspiracy requires an agreement between two or more people, not among every named defendant.  *See Miller*, 471 U.S. at 140.  Jury instructions 13 and 15 correctly stated the law.

*   *   *   *

The jury instructions did not impermissibly amend the indictment.  There was no error, much less plain error.

## I.  **ISSUES # 12-16:**  *Sentencing*

Appellants allege their sentences were procedurally unreasonable.  Ms. Vigil alone argues her sentence was substantively unreasonable.

## 1.  **Procedural Reasonableness**

Mr. Pawelski raises two procedural reasonableness issues.  <u>First</u>, he argues the district court should have applied the U.S.S.G. § 2J1.2 "obstruction of tax laws" Guideline rather than U.S.S.G. § 2T1.1.  <u>Second</u>, he argues the court miscalculated the base offense level in applying § 2T1.1.  Mr. Brokaw and Ms. Vigil incorporate those two arguments.  Ms. Vigil also argues the court imposed a procedurally unreasonable sentence on her by impermissibly considering her in-court conduct.  Mr. Pawelski joins that argument.

### a.  **ISSUE # 12:**  *Applicable Guideline (Mr. Brokaw, Mr. Pawelski, Ms. Vigil)*

Appellants contend the district court should have applied the § 2J1.2 obstruction-of-justice Guideline and its accompanying base offense level of 14 instead of the § 2T1.1 Guideline.

#### i.  <u>Standard of review</u>

We generally review procedural reasonableness on appeal for an abuse of discretion—factual findings for clear error and legal conclusions de novo.  *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  Because Appellants raise this argument

-47-

for the first time on appeal, the standard of review is plain error. *McComb*, 519 F.3d at 1054.

    ii.  <u>Legal standard</u>

When determining the applicable guideline, the district court is to engage in three steps: "(1) identify[] the charge from the indictment and jury instructions, (2) find[] the substantive offense in the guidelines' statutory index, and (3) find[] the applicable guideline range." *United States v. Kupfer*, 797 F.3d 1233, 1244 (10th Cir. 2015) (citing U.S.S.G. § 1B1.2). "When assessing a conspiracy conviction, the sentencing guidelines instruct courts to choose the guideline provision that best fits the substantive offense underlying the conspiracy or use the general conspiracy guideline." *Id.* (citing U.S.S.G. §§ 1B1.2, 2X1.1).

Section 2T1.1 is entitled "Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents," is contained within the section of the guidelines for "Offenses Involving Taxation." It is contained within a section of the Guidelines entitled "Part T. Offenses Involving Taxation." Section 2J1.2 is entitled "Obstruction of Justice" and contained within a section entitled "Part J. Offenses Involving the Administration of Justice."

    iii.  <u>Analysis</u>

Each Appellant was convicted of multiple crimes, including obstruction of tax laws in violation of 26 U.S.C. § 7212(a). The First Superseding Indictment alleged the Appellants violated this provision by mailing fraudulent documents to IRS and Treasury

-48-

employees and attempting to satisfy tax debts by submitting electronic fund transfers drawn on closed bank accounts.

The applicable guideline for a violation of § 7212(a) is § 2J1.2, which sets base offense level of 14.  Appellants argue, "[W]hile it is true that the defendants had unpaid tax debt, the clear reality is that Pawelski and the co-defendants were charged and convicted not for truly evading taxes or filing truly 'fraudulent' statements intending to reap the benefits from the government—they were charged and convicted for being an annoyance."  Pawelski Aplt. Br. at 52.  They argue § 2J1.2 should be used because it is "most applicable to the offense of the conviction."  *Id.* (quoting U.S.S.G. § 1B.2(a)).

The record supports the district court's conclusion that § 2T1.1 applies as the "best fit[]." *Kupfer*, 797 F.3d at 1244.  Appellants' conduct occurred in the course of a tax-fraud scheme in which they filed 11 false claims seeking over $23,000,000 in tax refunds, harassed IRS and Treasury employees, attempted to use fraudulent electronic fund transfers to satisfy tax obligations, and recruited and trained other tax protestors.  Their obstructive conduct furthered the overarching tax-fraud scheme.

But even if the record makes the question reasonably debatable whether § 2T1.1 or § 2J1.2 "best fits the substantive offense[s] underlying the conspiracy," *see id.* at 1244, any error was not "clear" or "obvious," *Olano*, 507 U.S. at 734, because the district court's application of § 2T1.1 finds support in the record.  Appellants have failed to demonstrate plain error.

b.  **ISSUE # 13:**  *Base offense level (Mr. Brokaw, Mr. Pawelski, Ms. Vigil)*

Mr. Pawelski's presentence report recommended, and the court adopted, a base

offense level of 28 under § 2T1.1 based on the "total amount of false refunds" he

claimed—$23,691,935—and on the "intended tax loss of at least $7,272,680 based on the

additional tax debts that the defendants attempted to avoid through their obstructive

conduct."  Pawelski ROA, Vol. II at 45.  Appellants argue the district court should have

applied the base offense level of 6 under § 2T1.1 because they did not receive any actual

tax refunds.

i.  <u>Standard of review</u>

Mr. Pawelski states he "objected that there was no loss here" but "[t]he district

court didn't listen."  Pawelski Aplt. Br. at 49.  During sentencing, the district court asked

Mr. Pawelski whether he had any objections to the presentence report.  Mr. Pawelski then

stated he was "not the statutory name" but a "natural man" with "flesh and blood running

through [his] body."  Pawelski ROA, Vol. V at 1043-44.  After again challenging the

jurisdiction of the United States and the State of Colorado, he stated the district court

"instructed the jury that if there was no funds received, there was no crime."  *Id.* at 1045.

He then stated the jury erroneously convicted him even though there "were no funds

received."  *Id.*  In other words, he objected to his conviction.

He now argues his comments constituted an objection to the district court's

calculation of his base offense level.  We disagree.  There was no specific objection to his

sentence.  We therefore review the district court's calculation of the base offense level for

-50-

plain error. *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014) (applying

plain error because the defendant "did not preserve the procedural challenge below"

(quotation omitted)); *United States v. Thornhill*, 276 F. App'x 793, 797 (10th Cir. 2008)

(unpublished) (applying plain-error review because there was "no specific objection to

the presentence report or calculation of the sentence"); *McComb*, 519 F.3d at 1054 (10th

Cir. 2007) (reviewing sentence for plain error because defendant made no

"contemporaneous objection").

    ii. <u>Legal standard</u>

    A sentence is procedurally unreasonable if the district court miscalculates the

Guidelines sentence. *United States v. Gordon*, 710 F.3d 1124, 1160 (10th Cir. 2013).

The Guidelines provision at issue is U.S.S.G. § 2T1.1, which states:

    (a) Base Offense Level:

        (1) Level from § 2T4.1 (Tax Table) corresponding to the tax loss; or

        (2) 6, if there is no tax loss.

   . . . .

    (c) Special Instructions

    For the purposes of this guideline--

        (1) If the offense involved tax evasion or a fraudulent or false return,
statement, or other document, the tax loss is the total amount of loss
that was the object of the offense (i.e., the loss that would have
resulted had the offense been successfully completed).

       . . . .

(4) If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.

In sum, § 2T1.1(a)(1) directs district courts to calculate the base offense level "corresponding to the tax loss" by referring to the § 2T4.1 tax table. Section 2T1.1(c)(1) defines "tax loss" as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." Section 2T1.1(c)(4) states that if the offense is a false claim for a refund, "the tax loss is the amount of the claimed refund to which the claimant was not entitled." The § 2T4.1 tax table provides a base level offense of 28 for a "tax loss" of more than $25 million but less than $65 million.

  iii.  <u>Analysis</u>

Appellants raise two arguments regarding the base offense level. Both fail.

<u>First</u>, they argue base offense level 6 applies under § 2T1.1(a)(2) because there was no actual loss. But § 2T1.1(c)(1) defines "tax loss" as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." And when, as here, the crime is a false claim for a tax refund, § 2T1.1(c)(4) states "the tax loss is the amount of the claimed refund to which the claimant was not entitled."

Appellants argue applying the § 2T1.1(c)(1) and (4) definitions would render § 2T1.1(a)(2) meaningless because there would never be a situation in which a tax loss does not occur. The statute, they say, is ambiguous and the rule of lenity should apply.

We have a "duty to give effect, if possible, to every clause and word of a statute."

*Duncan v. Walker*, 533 U.S. 167, 174 (2001).  Appellants, however, have failed to show

that applying the § 2T1.1(c)(1) and (4) definitions of "tax loss" would render

§ 2T1.1(a)(2) surplusage.  Section 2T1.1 applies to other statutes of conviction.  *See*

U.S.S.G. App. A (stating § 2T1.1 applies to 26 U.S.C. §§ 7201, 7203, 7206(1), (3), (4),

(5), 7207, 7211, and 7212(a)).  For example, § 2T1.1 applies to convictions under

26 U.S.C. § 7203, which, among other things, prohibits "[a]ny person required  . . . to

make a return, keep any records, or supply any information" from willfully failing to do

so.  Section 2T1.1(c)(3) states, "If the offense involved willful failure to pay tax, the tax

loss is the amount of tax that the taxpayer owed and did not pay."  As Appellants

conceded at oral argument, it is possible for someone to be convicted of willfully failing

to file a tax return but owe no taxes.  Oral Argument at 29:02-29:35.  That situation

would result in no tax loss under § 2T1.1, and the base offense level of 6 would apply.

Simply put, § 2T1.1(a)(2) is applicable in some circumstances.  The fact that

§ 2T1.1(a)(2) does not apply when sentencing under some statutes of conviction does not

mean the provision is surplusage.

Second, Appellants argue "it is impermissible to base [the] offense level on a tax

loss that was never truly intended, and one which could never have occurred."  Pawelski

Aplt. Br. at 47.  They cite two cases in which we concluded the intended loss was not

controlling for sentencing purposes if the defendant was "incapable of inflicting that

loss."  *United States v. Flanders*, 491 F.3d 1197, 1218 (10th Cir. 2007) (quotation

-53-

omitted) (applying U.S.S.G. § 2F1.1); *see also United States v. Milton*, 12 Fed. App'x

643, 649 (10th Cir. 2001) (unpublished) (stating offense-level increase under § 2F1.1 was

"improper where the defendant was incapable of inflicting the intended loss").  Both

*Flanders* and *Milton* applied § 2F1.1.[4]

In response, the Government cites *United States v. Gassaway*, 81 F.3d 920 (10th

Cir. 1996), in which we applied U.S.S.G. § 2T1.3.[5]  The defendant argued no tax loss

occurred because he paid his taxes after the IRS informed him of an audit and before the

government filed criminal charges.  81 F.3d at 921-22.  We concluded, "Defendant's

argument that no tax loss occurred in this case is spurious at best.  Defendant essentially

asks us to hold that where a willful attempt to evade taxes fails, no tax loss occurs.  The

success or failure of tax evasion, however, does not govern the applicability of the

guidelines."  *Id.* at 922.

Appellants' argument is unpersuasive.  Both *Flanders* and *Milton* dealt with

§ 2F1.1.  Section 2T1.1 applies here and defines tax loss as the loss that "would have

resulted" if the scheme were successful.  It does not recognize an exception for loss that a

defendant did not intend or could not accomplish.  And Appellants cite no case in which

we have disregarded a base-offense-level calculation under § 2T1.1 because a tax loss

seemed unintended or impossible.  Indeed, we agree with the Government that *Gassaway*

---

[4]  Section 2F1.1 was deleted and consolidated with § 2B1.1 in 2001.

[5]  Section 2T1.3 was deleted and consolidated with § 2T1.1 in 1993.

forecloses us from doing so.

We conclude the district court did not err, much less commit plain error, by calculating a base offense level of 28.

c. **ISSUE # 14:** *Ms. Vigil's in-court conduct (Mr. Pawelski and Ms. Vigil)*

Ms. Vigil contends the sentencing court impermissibly considered her in-court conduct. Mr. Pawelski incorporated this argument even though Ms. Vigil's brief limits its discussion to her circumstances.

i. Additional background

The probation office recommended a 48-month sentence for Ms. Vigil based on her "reduced culpability" when compared to her codefendants. Vigil ROA, Vol. VI at 39. The court rejected this recommendation, stating, "Both the evidence admitted at trial and the defendant's disrespectful attitude during trial and in the first sentencing hearing demonstrate that she was not significantly less culpable than her codefendants." *Id.* at 39-40. The court then stated the evidence at trial "established [Ms. Vigil's] involvement in every aspect of the two conspiracies of which she was convicted, and the only distinction between this defendant's culpability and that of her codefendants' is her apparently reduced role in the organization of meetings and dissemination of information to the tax protester group." *Id.* at 40.
The court imposed a 72-month sentence.

ii. Standard of review

Ms. Vigil did not object at the sentencing hearing and does not argue the district

court committed plain error on appeal.  Instead, she argues plain error does not apply because "nothing prior to the sentencing hearing would have alerted her to the prospect that the court would determine culpability based on in-court conduct."  Vigil Aplt. Br. at 53 n.8.

Under Federal Rule of Criminal Procedure 51(b), "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of . . . the party's objection to the court's action."  Ms. Vigil had the opportunity to preserve her objection at the sentencing hearing.  But she failed to do so, and plain error applies. *Lucero*, 747 F.3d at 1246 (applying plain error because the defendant "did not preserve the procedural challenge below" (quotation omitted)).

   iii.  <u>Legal standard</u>

A procedural error occurs when a district court fails "to calculate (or improperly calculat[es]) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall v. United States*, 552 U.S. 38, 51 (2007).

Under 18 U.S.C. § 3661, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  Under U.S.S.G. § 6A1.3, "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial.  Any

information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." (citations omitted).

    iv.  <u>Analysis</u>

Ms. Vigil has failed to argue plain error on appeal and we therefore need not address her argument. *See, e.g.*, *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (stating appellant waived unpreserved argument by failing to argue plain error on appeal); *United States v. Jameson*, 478 F.3d 1204, 1212 (10th Cir. 2007) (stating we need not address unpreserved argument when appellant has not argued plain error on appeal).

The argument would nevertheless fail. She cites no case law stating the district court could not consider her in-court conduct when determining the appropriate sentence. The court stated Ms. Vigil's disrespectful conduct indicated she did not accept responsibility, she was not less culpable than her codefendants, and there was a risk she would reoffend. The district court did not limit its analysis to in-court conduct—it also relied heavily on the evidence presented at trial that showed Ms. Vigil participated in most aspects of the conspiracy. We therefore cannot conclude the court committed error, much less plain error, in considering Ms. Vigil's in-court conduct to determine her sentence.

2. **ISSUE # 15: Substantive Reasonableness of Ms. Vigil's Sentence (Mr. Pawelski and Ms. Vigil)**

Ms. Vigil argues her sentence is substantively unreasonable (1) when compared with her codefendants' sentences and (2) when compared to in-circuit sentences for

similar crimes.  Mr. Pawelski adopted these arguments, even though they are specific to Ms. Vigil and paint him in a negative light.

a. *Additional background*

Ms. Vigil's initial base offense level was 30, which yielded an advisory imprisonment range of 97 to 120 months on Count 1, 60 months on Counts 12 and 14, and 36 months on Count 16.  The probation office recommended a sentence of 48 months.  The court varied downward to a base offense level of 26, which yielded a range of 63 to 78 months, and imposed a term of 72 months, below the advisory range before the downward variance.

b. *Standard of review*

"When reviewing a sentence for substantive reasonableness, this court employs the abuse-of-discretion standard, a standard requiring substantial deference to district courts.   A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (citations and quotations omitted).  In other words, "we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices."  *McComb*, 519 F.3d at 1053.

c. *Legal standard*

"A sentence is substantively unreasonable if the length of the sentence is unreasonable given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors."  *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008).  A sentence that

falls below the advisory guideline range is presumptively reasonable.  *United States v. Perez-Jiminez*, 654 F.3d 1136, 1146-47 (10th Cir. 2011).

    d.  *Analysis*

Seemingly acting against interest, Mr. Pawelski incorporated Ms. Vigil's arguments that assert she was "much less culpable" than him.  These arguments are specific to her and provide no basis for reversing Mr. Pawelski's sentence.

Ms. Vigil cannot overcome the presumption of reasonableness attached to her sentence because it falls below the advisory guideline range.  *Perez-Jiminez*, 654 F.3d at 1146-47.

<u>First</u>, she argues her sentence is unreasonable compared to her codefendants' sentences.  The district court, however, found the trial evidence demonstrated that Ms. Vigil participated in "every aspect" of the scheme for over four years.  Vigil ROA, Vol. VI at 40.  And her conduct at trial shows she was committed to disrupting and protesting the proceedings along with her codefendants.  The district court's sentence as it related to Ms. Vigil's comparative involvement and culpability did not constitute an abuse of discretion.

<u>Second</u>, Ms. Vigil cites in-circuit cases in which Defendants convicted of tax crimes received lesser sentences.  But "[n]o two cases are identical, and comparison of an individual sentence with a few counsel-selected cases involving other defendants sentenced by other judges is almost always useless."  *United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015) (citation, footnote, and quotations omitted).  Ms. Vigil's

sentence is longer than those in the cases she cites.  But none of those cases "involved all of the same circumstances as [Ms. Vigil's]," *id.* at 1373, and she does not demonstrate otherwise.  We therefore conclude the district court's sentence was not "arbitrary, capricious, whimsical, or manifestly unreasonable." *Friedman*, 554 F.3d at 1307 (citations and quotations omitted).  Likewise, we conclude Ms. Vigil has not overcome the "rebuttable presumption of reasonableness on appeal." *Balbin-Mesa*, 643 F.3d at 788 (quotation omitted).

3.  **ISSUE # 16:  Ms. Vigil's Age and History (Ms. Vigil)**

Ms. Vigil separately contends her sentence is unreasonably long based on her age, status as a first-time offender, and history of productive employment.  She provides no authority supporting her argument that a 72-month sentence is unwarranted based on her age.  We are not persuaded that the district court abused its discretion by imposing a sentence outside "the realm of . . . rationally available choices." *McComb*, 519 F.3d at 1053.

\*   \*   \*   \*

We conclude Appellants' sentences were neither procedurally nor substantially unreasonable.

### III. **CONCLUSION**

We conclude the district court committed no reversible error.  We therefore affirm

as to each Appellant in each appeal.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                                          Chris Wolpert
Clerk of Court                        June 02, 2016              Chief Deputy Clerk

Mr. Cody Clayton Bourke
Snell & Wilmer
1200 17th Street
Suite 1900
Denver, CO 80202

Mr. John M. Bowlin
Davis Graham & Stubbs
1550 Seventeenth Street, Suite 500
Denver, CO 80202

Mr. Neal John Giersch McConomy
Snell & Wilmer
1200 17th Street
Suite 1900
Denver, CO 80202

Mr. Jonathan William Rauchway
Davis Graham & Stubbs
1550 Seventeenth Street, Suite 500
Denver, CO 80202

Ms. Ann Marie Taliaferro
Brown, Bradshaw & Moffat
10 West Broadway
Suite 210
Salt Lake City, UT 84101-0000

Ms. Jessica E. Yates
Snell & Wilmer
1200 17th Street
Suite 1900
Denver, CO 80202

RE:       15-1056, 15-1057, 15-1058, United States v. Pawelski

Dist/Ag docket: 1:13-CR-00392-CMA-2

Dear Counsel:

Enclosed is a copy of the order and judgment issued today. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:     Matthew T. Kirsch
        James C. Murphy
        Martha A. Paluch


EAS/jm